Mary Wilma JAMES, Appellant,

v.

Buford FARRINGTON, et
al., Respondents.

No. WD 45762.

Missouri Court of Appeals,
Western District.

Nov. 17, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 22, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Charles Robert Buckley, Independence,
for appellant.

Jack C. Terry, Independence, for respondents.

Before TURNAGE, P.J., and
BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

Plaintiff James appeals Circuit Court's grant of defendant's motion for summary judgment on the issue of whether a part of a church rented to respondent election board as a polling place constituted a "public entity's property" within the meaning of § 537.600.1(2), RSMo.[1] The trial court held that the property which was possessed and occupied by the election board, but not owned by it, was not a "public entity's property" within the meaning of the statute.

Both parties agree the issue on appeal is whether the polling place in the church used by the Board constitutes a "public entity's property" thereby triggering a waiver of sovereign immunity pursuant to § 537.600.1(2). Resolution of the issue depends on whether property which is possessed and occupied, but not owned by a public entity, is a "public entity's property" within the purview of § 537.600.1(2). The Board agrees that it is a public entity as the term is used in § 537.600.1(2).

On March 8, 1988, when plaintiff, Mary James, entered the Immanuel Baptist Church (Church) to vote, she stepped down onto a temporary step and suffered a trimalleolar fracture of her right ankle. The defendant, Jackson County Board of Election Commissioners (Board), was using the

---

**1.** All statutory references are to the Revised Statutes of Missouri 1986, unless otherwise indicated.

church for the 1988 Super Tuesday election, pursuant to a written agreement with the church. This written agreement, "the Poll Contract," provided for a rental fee for the use of the premises.

The voting machines and election personnel occupied Fellowship Hall of the church. The Board had full and total control of the church used for the election while the election was being conducted. The door on the west side of the church building was the only door made available to the Board and voters on election day. This entrance opens into a hallway which leads to the doorway of the Fellowship Room Hall located approximately fifteen feet inside the building. At the outside entrance, there was a wooden step that had been placed inside the door. It was upon entering this entrance that plaintiff was injured. The Board's employee inspected the premises before the election and noted in a written report that the step was not a standard height. The plaintiffs' allegations of negligence was that the step was not of standard height and not adequately marked or lighted.

**Section 537.600.1(2)** in relevant part states as follows:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statute in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

   (2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of

the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition where a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

In *Kanagawa v. State*, 685 S.W.2d 831 (Mo. banc 1985), the Missouri Supreme Court, following the dictates of the statute, established a four-prong test to determine whether the dangerous condition exception was applicable to constitute a waiver of sovereign immunity. The Court listed four elements which a plaintiff seeking to state a claim under the exception must allege with sufficient facts. *Id.* at 835.[2] These prerequisites are as follows: (1) injury caused by the condition of a *public entity's property* if established as dangerous; (2) that the plaintiff's injury directly resulted from that dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition. *Id.* (emphasis added).

The trial court granted summary judgment on the first of the Kanagawa elements because it found the property in question was not the property of the election board within the purview of § 537.600.-1(2). The issue on appeal is whether a church that rented space to an election board as a polling place constitutes a public entity's property.

The standard for reviewing the grant of a summary judgment is "to scrutinize the record in the light most favorable to the party against whom the motion was filed and to accord to such party the benefit of every doubt." *Hurwitz v. Kohm*, 516 S.W.2d 33, 36 (Mo.App.1974). The plaintiff

---

**2.** While Kanagawa was decided under the 1978 version of the sovereign immunity statute, the 1985 and 1989 amendments do not modify the

dangerous condition exception that was contained in the 1978 act.

has alleged facts to show that the Board exercised possession and control over the election facility. These facts include: (1) the church did not use that part of the church reserved for election purposes; (2) the Board had full and total control of that part of the church during the election; (3) the Board was given permission to inspect premises, to post any kind of warning and to make any temporary non-invasive alterations to the premises that the Board deemed necessary; and (4) that the Board exercised exclusive control over the part or the area of the church contracted for during the election process. These allegations are sufficient to state a cause of action if an interest in land less than fee simple ownership is not a requirement.

Defendants cite *Tyler v. Housing Authority of Kansas City*, 781 S.W.2d 110 (Mo.App.1989) and *Claspill v. State Div. of Economic Dev.*, 809 S.W.2d 87 (Mo.App. 1991) as support for § 537.600.1(2) requiring ownership of the property. In *Claspill*, the court of appeals faced a claim arising out of injuries sustained at a railroad crossing. *Claspill*, 809 S.W.2d at 88. The railroad crossing was not owned by the public entity being sued but by another public entity. *Id.* at 89. Reliance on *Claspill* is misplaced. The *Claspill* court addressed the issue of whether under § 537.-600.1(2) the negligent employees had to be employees of the public entity owning or occupying the property. *Id.* at 88. In the present case, this is clearly satisfied because the individuals in charge of the polling place during the election and those responsible for the inspection of the polling place were employees of the Board.

The *Tyler* case involved an injury on property owned by a third party and enrolled under a housing program administered by the defendant, Housing Authority of Kansas City. *Tyler*, 781 S.W.2d at 111. The defendant made monthly payments to the owners of the property to assist in the rental payments of low income persons. *Id.* Additionally, the defendant was alleged to have legal responsibilities relating to the safety of the house and the imposition of certain rules and regulations on the owners. *Id.* at 111–112. In dismissing plaintiff's petition, the *Tyler* court defined the term "dangerous condition" as used in the statute waiving sovereign immunity as referring only to a defect in the physical condition of public property. *Id.* at 112. Plaintiff Tyler's allegation of negligence was that the defendant failed to supervise, control, and inspect the property. *Id.* This case does not address the issue at hand nor does it offer guidance as to the ownership requirements of § 537.600. Plaintiff James' petition takes aim at the wooden step which was not of a standard height, not adequately marked or lighted and which was located just inside the door. She alleges that the Board failed to remedy, remove, or warn of the dangerous and defective condition. Employees of the Board actually occupied the polling premises and were provided the authority to make this possession exclusive to the voting public and authorized personnel.

When dealing with § 537.600, the courts focus primarily upon the definition of the term "dangerous condition" but as yet have not defined the term "public entity's property." That term should be construed in such a fashion that reflects both the legislature's intent and the plain meaning of the words. Section 115.117, RSMo permits an election authority to "contract for the rental of a suitable polling place." A "polling place" is defined in § 115.013(19) as "the voting place designated for all voters residing in one or more precincts for any election." Section 115.409, RSMo states that only election authority personnel, election judges, watchers and challengers or law enforcement officials at the request of election officials who were in the line of duty, and registered voters "shall be admitted to the polling place." The Board's control extended to the entrance of the polling place because in the conduct of the election it must supervise and control activities within 25 feet of the outer door closest to the polling places. § 115.637(18). Not only statutorily but by necessity the Board must have the ability to control the voting area and the entrance and exit to the actual point of voting. Therefore, the Board had both the statutory authority and

the actual ability to monitor the polling place, exclude unauthorized persons and generally, exercise control over the Fellowship Hall and the entrance, during the election proceedings.

■ A determination that the Board had possession or control of the polling place does not end the inquiry for purposes of establishing an exception to sovereign immunity. Defendants assert that the "public entity's property" should be narrowly construed to include only that property which is *owned* by a public entity, regardless of the control it may exert over such property. Our research has not found any Missouri cases which have considered whether the public entity must hold fee simple title in the property in order for this exception to apply. Even though strict construction of statutory provisions waiving sovereign immunity is required, it is also true that words in statutes are to be considered in their plain and ordinary meaning in order to ascertain the intent of the lawmakers. *See Kanagawa*, 685 S.W.2d at 834; *Donahue v. St. Louis*, 758 S.W.2d 50, 52 (Mo. banc. 1988). The statute refers to "a public entity's property" and the definition of property suggests more than a fee simple ownership. *Webster's New Collegiate Dictionary* defines property as "something owned or possessed."

Under the facts of the present case, a definition of the term "public entity's property" includes the exclusive control and possession of a polling place. Therefore, possession and control of premises during the election constituted "property" and it was not necessary the Board have ownership of the property to constitute a waiver of sovereign immunity.

This holding is consistent with the common law of premises liability in Missouri, which extends liability to possessors of property. In fact, plaintiff argues that § 537.600 dealing with public entity immunity and the waiver thereof is merely codifying the existing liability of a possessor of land to an invitee in relation to a public entity. The elements of this tort, which can be found at Restatement (2d) of Tort,

§ 343 (1965), are very similar to those elements found in § 537.600 which deals with dangerous conditions on a public entity's property. The Restatement (Second) of Torts, § 343, which was adopted by the Missouri Supreme Court in *Gilpin v. Gerbes Supermarket, Inc.*, 446 S.W.2d 615, 618 (Mo. banc 1969), sets forth the elements of a cause of action against a possessor of land as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they would not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

■ When dealing with a possessor of land, such a possessor is subject to liability for physical harm caused to his invitee by the condition of land. In *Hunt v. Jefferson Arms Apartment Co.*, 679 S.W.2d 875 (Mo. App.1984), an independent contractor who was occupying the building to make improvements was liable for injuries to the plaintiff. The court recognized that premises liability of a "landowner" to an invitee "should more accurately be phrased the liability of the occupant or possessor of the land." *Id.* at 879; *McKeighan v. Klines, Inc.*, 98 S.W.2d 555, 559 (Mo.1936).

When the legislature adopted § 537.600.-1(2) it is presumed to have been aware of the existing common law of premises liability as expressed in the Restatement. Statutes should be "construed in a way that synchronizes their meaning with the existing common law." *Lawson Rural Fire Ass'n v. Avery*, 764 S.W.2d 113, 116 (Mo. App.1988). Therefore, we construe the statute in harmony with the Restatement so that a possessor of land is subject to liability.

The judgment of the trial court granting the motion for summary judgment is reversed and the case is remanded for fur-

ther proceedings in accordance with this opinion.

All Concur.