Julie **TERRY**, Johnny W.
Kriewitz, Appellants,

v.

Steven **McINTOSH**, et al., Respondents.

Nos. WD 52260, WD 52261.

Missouri Court of Appeals,
Western District.

Submitted Nov. 26, 1996.

Decided Feb. 4, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 1996.

Application to Transfer Denied April 29, 1997.

Hayward G. Lafferty, Jr., Robert K. Ball, II, Kansas City, for appellants.

Scott Long, Overland Park, for respondents.

Before SMART, P.J., and SPINDEN and ELLIS, JJ.

PER CURIAM:

Julie Terry was injured and Johnny Kriewitz's son was killed in a boating accident on June 25, 1993 at Smithville Lake. Terry and Kriewitz filed suit against the driver of the boat, Steven McIntosh, the Missouri State Water Patrol and Clay County. Clay County moved for summary judgment and the trial court granted the motion. The order is final for purposes of appeal. Terry and Kriewitz appeal from that order. They contend that the trial court erred because it based its decision on flawed affidavits and deposition testimony. They contend there was a genuine issue for trial. Also, the appellants argue that Rule 74.04 is unconstitutional because denies them the rights guaranteed to them under the Missouri Constitution. Because the undisputed facts concerning the County's lease show that the alleged dangerous condition of property was not a part of the leased premises under the control of Clay County, and because there is no other potential theory of liability against Clay County (in view of the doctrine of sovereign immunity), we conclude that summary judgment was properly granted. The judgment of the trial court is affirmed.

On May 19, 1994, Kriewitz filed an amended wrongful death petition in the circuit court of Clay County naming Clay County, the Missouri State Water Patrol, and Steven McIntosh as defendants. Terry filed a similar petition for damages for her injuries. Both petitions concerned a boating accident that took place on June 25, 1993 at Smithville Lake. In these petitions it was alleged:

That at all times herein mentioned Smithville Lake was a public recreation facility located in Clay County, Missouri; that located upon and as a part of such lake at and near the Camp Branch of said lake was a dangerous trap and hazard for boaters using said lake in that rocks were located close to the surface thereof in such a position and proximity to the shoreline as to give no warning of their presence, and thus and thereby constituted a dangerous condition of the property of the defendant State of Missouri as that term is used in § 527.600, RSMo.

Clay County filed motions for summary judgment stating that it should be dismissed from the actions because it does not own or control the area allegedly containing the alleged "hazardous" condition. It further stated that the county was entitled to sovereign immunity and that there was no exception to sovereign immunity that would allow suit. The motion contained the following:

11. The United States of America owns Smithville Lake and the land immediately surrounding the lake, including the shoreline of the lake. The lake was designed, constructed, and is operated by the United States Army Corp of Engineers....

12. The 1984 Army Lease is the existing lease between the Department of the Army and Clay County, and has been in force and effect since 1984 and currently [is] in effect....

13. Clay County leases a portion of the area surrounding Smithville Lake, including a portion of the shoreline, from the United States Army. This leasehold is the only "ownership" interest Clay County has in the lake. Said interest does not include any portion of the lake itself (as distinguished from the land surrounding the lake)....

14. Clay County's lease with the United States Army provides that the area under the County's control stops at the water-line of the lake, which is below 684.2 below mean sea level. Thus, Clay County has no ownership or right to control any portion of Smithville Lake, or any area past the shoreline into or onto the lake. The bounds of the property covered by the lease are set forth in a map attached thereto....

15. Under the 1984 Army Lease, Clay County is granted authority to "administer recreational activities" in certain areas of the lake in accordance with plans approved by the Army Corp of Engineers. The only such areas at Smithville Lake "administered" by Clay County are two designated swimming areas, and the areas around boat docks and boat ramps....

16. The incident giving rise to this matter did not occur in any area "administered" by Clay County.

The motion for summary judgment had several attachments that supported Clay County's assertions. The lease between the Army Corp of Engineers and Clay County states:

The lessee is authorized to administer and maintain the contiguous shoreline exposed by the drawdown below elevation 864.2′ m.s.l. Further, the lessee is granted the right to mark all contiguous coves and water areas and to administer the recreational activities therein, in accordance with plans approved in writing by the District Engineer.

The deposition of John J. Hartman, Jr. was attached to the motion. Hartman is the Director of Parks for Clay County. In his deposition, Hartman explained that Clay County does not lease anything below 864.2 feet mean sea level, the normal pool elevation. Hartman demonstrated, using maps,

what property was subject to the lease. The legal description, of the leased property specifically references the 864.2′ m.s.l. elevation. The site of the accident was not within the area described as a part of the leasehold.

Appellant's reply to Clay County's motion for summary judgment came in the form of a motion to strike and an answer that admitted or denied the various allegation in the summary judgment motion. Appellants did not refute the evidence presented by Clay County with any other evidence. The trial court granted Clay County's motion and this appeal followed.

## SUMMARY JUDGMENT

Appellate review of summary judgments is essentially a *de novo* review. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996). The record is reviewed in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The moving party has the burden of establishing that it is entitled to judgment as a matter of law. *Id.* at 382. Evidence in the record that presents a genuine issue of material fact will defeat a movant's right to summary judgment. *Id.* A genuine issue "implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities." *Id.* at 378. In other words, the dispute must not be simply argumentative, frivolous or imaginary. *Id.* at 382. If the trial court's grant of summary judgment is sustainable on any theory as a matter of law, then that grant must be sustained. *Preston v. Preston*, 823 S.W.2d 48, 49 (Mo.App.1991).

Once a movant has met the criteria established by Rule 74.04, establishing a right to judgment as a matter of law, the non-movant must in some way show that any one or more of the material facts presented by the movant is open to genuine dispute. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381–82. The rule states that, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but the response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." *Rule 74.04(e).*

## SOVEREIGN IMMUNITY

■ The Missouri Supreme Court in *Jones v. State Highway Comm'n*, 557 S.W.2d 225 (Mo. banc 1977), abrogated the common law doctrine of sovereign immunity. The doctrine was reinstated, in a somewhat modified form, by legislative action. *See Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 834 (Mo. banc 1985). In order to temper the sometimes severe effects of the doctrine, the legislature provided for waiver of sovereign immunity in certain situations. *Id.* Section 537.600, RSMo 1994, provides:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted form the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. . . .

The provisions in the statute waiving sovereign immunity are to be narrowly construed. *Fantasma v. Kansas City Bd. of Police Commissioners*, 913 S.W.2d 388, 391 (Mo.App. 1996).

■ Appellants rely on § 536.600.1(2), contending that the dangerous condition of Smithville Lake was the direct and proximate cause of the injury to Ms. Terry and the death of Johnny Kriewitz's son. Clay County, however, in its motion for summary judgment and the attachments thereto, made the showing that the accident did not occur on any property controlled by Clay County. Appellants did not produce evidence to refute or contradict Clay County's evidence. The trial court properly entered summary judgment in Clay County's favor under 74.04(e).

Appellants contend that the accident report and the affidavits attached to the motion for summary judgment were not competent evidence upon which the trial court could base its decision. The accident report is irrelevant to the issue of whether or not the area in which the accident took place was the property of Clay County. The lease itself, the description of the property leased, the deposition and testimony of John J. Hartman, and the deposition of William Cox, all are competent evidence satisfying the requirements of Rule 74.04(e).

Rule 74.04(e) requires that, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hartman's affidavit is in compliance with 74.04(e). It states that he is the director of the Clay County Department of Parks and Recreation and that he supervises the portion of property that is maintained and operated at Smithville Lake. The affidavit states that it is based upon his personal knowledge and that the only portion of land leased from the Army Corp of Engineers is a portion of shoreline and land around the lake. His deposition provides more of the facts supporting his statement of the affidavit. His testimony included references to the maps showing what the leasehold was and what it was not. These are all statements of fact and not legal conclusions. The genuineness of the lease itself and the legal description of the property are not challenged by appellants. There is nothing that refutes the fact that Clay County did not own, control, or maintain the property where the accident occurred. This is not a case where there is any contention that liability can be predicated upon Clay County's failure to take actions

to insure the safety of property belonging to the Corp of Engineers. Moreover, the affidavits and depositions show that the County assumed no responsibility for the water in the area in question. No genuine issue of material fact is presented.

## CONSTITUTIONAL VALIDITY OF SUMMARY JUDGMENT

Appellants also challenge the constitutional validity of Rule 74.04 claiming that as it is presently written Rule 74.04 denies rights guaranteed under Missouri's Constitution, such as the right to confront witnesses and the right to trial by jury. The issue has not been preserved for review as it was not presented to or ruled upon by the trial court. *See Gleitz v. St. John's Mercy Medical Center,* 927 S.W.2d 506, 508 (Mo.App. E.D.1996). Furthermore, the right to a jury trial is dependent on whether or not "the pleadings so warrant and there exists disputed factual issues." *Finn v. Newsam,* 709 S.W.2d 889, 893 (Mo.App.1986).

Judgment is affirmed.