Evelyn THOMAS, et al, Appellant,

v.

CLAY COUNTY ELECTION BOARD,
et al, Respondent.

No. WD 68514.

Missouri Court of Appeals,
Western District.

June 3, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 29, 2008.

Application for Transfer Denied
Sept. 30, 2008.

Joseph M. Ellis, Kansas City, MO, for appellant.

Samuel McRoberts, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, P.J., LISA W. HARDWICK and JOSEPH P. DANDURAND.

JOSEPH P. DANDURAND, Judge.

William R. and Evelyn Thomas appeal the grant of summary judgment in favor of the Clay County Election Board and its members. On appeal, the Thomases claim

the trial court erred in finding the Board was protected by sovereign immunity. The point is granted, and the judgment of the trial court is reversed and remanded.

## Facts

This appeal pertains to an action brought by William R. and Evelyn Thomas[1] against the Clay County Election Board and its members (the Board) and the North Side Church of Christ (the Church). The action pertains to injuries Ms. Thomas sustained when she fell on ice while attempting to vote in a presidential primary at the Church. Following substantial discovery, the Board filed a motion for summary judgment and suggestions in support. The Thomases filed a response. Additional replies and briefs were filed by the parties, and the matter was heard by the trial court, which granted the motion for summary judgment.

In its judgment granting the Clay County Election Board's Motion for Summary Judgment, the trial court made the following findings of fact:

1. On February 3, 2004, Plaintiff Evelyn Thomas ("Thomas") drove to the North Side Church of Christ ("Church") to vote in the Presidential Primary.

2. Just prior to the election, an ice storm hit the area.

3. While walking from the Church's parking lot to the polling site located within the Church, Plaintiff Thomas slipped on a patch of ice, fell, and broke her arm.

4. The location of the fall is marked by an "x" on Vasquez depositions Exhibit 2 and has been described as occurring on the Church's concrete "driveway."

5. Plaintiff Thomas agrees the Vasquez deposition Exhibit 2 is a "very accurate" visual representation of the incident.

6. The driveway led from the parking lot to what is marked on the exhibit as "double doors."

7. The Church's "double doors" marked the entrance to the polling location as indicated by signage and testimony.

8. The Church's office administrator estimates the distance between the "x" and the double doors as between 50 and 75 feet.

9. Even the Plaintiff admits the distance between the "x" and the double doors is more than 25 feet.

10. Subsequent to the accident, the definitive distance between the "x" and the double doors is approximately 63 feet.

11. The Board is a public entity and is protected by sovereign immunity unless waived by statute.

The trial court made the following conclusions of law:

Summary Judgment is appropriate in this case because no genuine issue as to the material facts exists. As a matter of law, this Court concludes that sovereign immunity precludes bringing suit against a public entity without its consent. *State ex rel Div. of Motor Carrier & R.R. Safety v. Russell,* 91 S.W.3d 612, 615 (Mo.2002) and § 537.600 RSMo. Immunity is waived to the extent an injury is caused by a dangerous condition of a public entity's property. § 537.600.1(2) RSMo. Defendant Clay County Election Board is considered a public entity for the purposes of sovereign immunity. *James v. Farrington,* 844 S.W.2d 517 (Mo.App. W.D.1992). Therefore, the question necessarily turns on whether Plaintiff's injury occurred on the Defendant Board's "property."

1. William and Evelyn are husband and wife.

In the context of a waiver of sovereign immunity, an Election Board's "property" includes the exclusive control and possession of a polling place. *Farrington*, 844 S.W.2d at 520. An Election Board's exclusive control and possession extends 25 feet from the outer door closest to the polling place. *Farrington*, at 519–20.

> The Board's control extended to the entrance of the polling place because in the conduct of the election it must supervise and control activities within 25 feet of the outer door closest to the polling places. § 115.637(18). Not only statutorily but by necessity the Board must have the ability to control the voting area and the entrance and exit to the actual point of voting. Therefore, the Board had both the statutory authority and the actual ability to monitor the polling place, exclude unauthorized persons and generally, exercise control over the Fellowship Hall and the entrance, during the election proceedings.

Therefore, if Plaintiff Thomas fell outside the 25–foot perimeter from the outer door of the polling place, which is admitted by Plaintiff and confirmed by witnesses in the Findings of Fact, Plaintiff Thomas then did not suffer injury as a result of dangerous condition on the Defendant Board's "property" on the election day. The accident occurred in the church parking lot in an area which the public entity did not exercise possession and control and was therefore not the public entity's "property" as required by the Missouri Statute (§ 537.600.1(2) RSMo.)

A Missouri appellate court recently reaffirmed in *Maune v. City of Rolla*, 203 S.W.3d 802, 805 (Mo.App. S.D.2006) that:

> We must strictly construe the statutory provisions that waive a public entity's sovereign immunity. *O'Dell v.*

*Department of Corrections*, 21 S.W.3d 54, 57 (Mo.App.2000). A "dangerous condition" under Section 537.600 requires some defect, physical in nature, in the sovereign's property. *State ex rel Div. of Motor Carrier and R.R. Safety v. Russell*, 91 S.W.3d 612, 616 (Mo. banc 2002); *Sisk v. Union Pacific R.R.*, 138 S.W.3d 799, 808 (Mo.App. 2005); *Tillison v. Boyer*, 939 S.W.2d 471, 473 (Mo.App.1996).

The phrase "injuries caused by the condition of a public entity's property clearly refers to ... *a property interest which allows a public entity to control the property.*" [emphasis added]. *Dorlon v. City of Springfield*, 843 S.W.2d 934, 938 (Mo.App. S.D.1992). It is this Court's conclusion that the accident and injuries sustained by the Plaintiff in this claim against the Clay County Election Board occurred outside of property owned or controlled by defendant Clay County Election Board and is therefore barred by sovereign immunity.

After the trial court entered judgment granting summary judgment in favor of the Board, the Thomases filed a motion to make the judgment final for appeal. The trial court made the grant of summary judgment final for appeal, and notice of appeal was timely filed.

### Standard of Review

"*ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993), sets forth the applicable standard of review: When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *Donaldson v. Crawford*, 230 S.W.3d 340, 342 (Mo. banc 2007). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless con-

tradicted by the non-moving party's response to the summary judgment motion." *Id.* "The non-movant is accorded the benefit of all reasonable inferences from the record." *Id.*

"The Court's review is essentially de novo." *Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "The propriety of summary judgment is purely an issue of law." *Id.* "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

"Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." *Foster v. St. Louis County,* 239 S.W.3d 599, 601 (Mo. banc 2007).

## Analysis

■ On appeal, the Thomases claim the trial court erred in entering summary judgment in favor of the Board. They assert the trial court erred in finding that Ms. Thomas did not fall on the Board's property for purposes of waiving sovereign immunity. Mr. and Ms. Thomas state the Board was in possession and control of the property by virtue of a written lease to use the property as a polling site. They further state the Board exercised possession and control through its actions and assumption of duty to make the property safe to voters. The point is granted.

■ Section 537.600 states, in relevant part:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition . . . .

2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

Subsection 1(2) is at issue in this appeal. To benefit from the statutory waiver of sovereign immunity set out in section 537.600.1(2), a plaintiff is required to prove the following four elements:

(1) that the property was in dangerous condition at the time of the injury,

(2) that the injury directly resulted from the dangerous condition-that is, that the dangerous condition was the proximate cause of the injury, *see Stanley v. City of Independence,* 995 S.W.2d 485, 488 (Mo. banc 1999);

(3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury that was incurred; and

(4) that a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

*Hensley v. Jackson County,* 227 S.W.3d 491, 496 (Mo. banc 2007). A threshold question must be answered before the matter of whether these four elements have been established is reached, though. The threshold question is whether the property in an allegedly dangerous condition belongs to the sovereign. *Summmit by Boyd v. Roberts,* 903 S.W.2d 631, 635 (Mo.App. W.D.1995). If not, the topic of sovereign immunity is never reached. This threshold question is the issue in the case *sub judice.*

As noted in detail in the statement of facts, the trial court granted summary judgment after concluding that Ms. Thomas's injury did not occur on the Board's property. It relied upon the rules stated in *James v. Farrington,* 844 S.W.2d 517 (Mo.App. W.D.1992), that an Election Board's property includes the possession and control of a polling place. It concluded that the Board did not own or control the area where Ms. Thomas fell and, thus, Ms. Thomas did not fall on the Board's property. The trial court came to this conclusion after interpreting *James* to stand for the proposition that a public entity's property always ends twenty-five feet from the polling doors.

The Thomases assert that the trial court's reliance on *James v. Farrington* is misplaced. They state that *James* stands for a broad, inclusive definition of "public entity's property" as opposed to the narrow, exclusive definition used by the trial court. The issue in *James* was "whether a church that rented space to an election board as a polling place constitutes a public entity's property." *Id.* at 518.

More specifically, the issue in *James* was "whether the polling place in the church used by the Board constitutes a 'public entity's property' thereby triggering a waiver of sovereign immunity pursuant to § 537.600.1(2)." *Id.* at 517. The court stated: "Resolution of the issue depends on whether property which is possessed and occupied, but not owned by a public entity, is a 'public entity's property' within the purview of § 537.600.1(2)." *Id.*

The facts in *James* were as follows:

The voting machines and election personnel occupied Fellowship Hall of the church. The Board had full and total control of the church used for the election while the election was being conducted. The door on the west side of the church building was the only door made available to the Board and voters on election day. This entrance opens into a hallway which leads to the doorway of the Fellowship Room Hall located approximately fifteen feet inside the building. At the outside entrance, there was a wooden step that had been placed inside the door. It was upon entering this entrance that plaintiff was injured. The Board's employee inspected the premises before the election and noted in a written report that the step was not a standard height. The plaintiffs' allegations of negligence was that the step was not of standard height and not adequately marked or lighted.

*Id.* at 518. The plaintiff in *James* alleged facts to show that the Board exercised

possession and control over the election facility. The facts included:

(1) the church did not use that part of the church reserved for election purposes; (2) the Board had full and total control of that part of the church during the election; (3) the Board was given permission to inspect premises, to post any kind of warning and to make any temporary non-invasive alterations to the premises that the Board deemed necessary; and (4) that the Board exercised exclusive control over the part or the area of the church contracted for during the election process.

*Id.* at 519. The court concluded that the plaintiff's "allegations are sufficient to state a cause of action if an interest in land less than fee simple ownership is not a requirement." *Id.*

In its analysis, the *James* court stated: When dealing with § 537.600, the courts focus primarily upon the definition of the term "dangerous condition" but as yet have not defined the term "public entity's property." That term should be construed in such a fashion that reflects both the legislature's intent and the plain meaning of the words. Section 115.117, RSMo permits an election authority to "contract for the rental of a suitable polling place." A "polling place" is defined in § 115.013(19) as "the voting place designated for all voters residing in one or more precincts for any election." ... The Board's control extended to the entrance of the polling place because in the conduct of the election it must supervise and control activities within 25 feet of the outer door closest to the polling places. § 115.637(18). Not only statutorily but by necessity the Board must have the ability to control the voting area and the entrance and exit to the actual point of voting. Therefore, the Board had both the statutory authority and the actual ability to monitor the polling place, exclude unauthorized persons and generally, exercise control over the Fellowship Hall and the entrance, during the election proceedings.

. . . .

Under the facts of the present case, a definition of the term "public entity's property" includes the exclusive control and possession of a polling place. Therefore, possession and control of premises during the election constituted "property" and it was not necessary the Board have ownership of the property to constitute a waiver of sovereign immunity.

*Id.* at 519–20.

*James* broadened the definition of "property" for purposes of the sovereign immunity statute. It held that "possession and control of premises during the election constituted 'property' and it was not necessary the Board have ownership of the property to constitute a waiver of sovereign immunity." *Id.* at 520. In examining whether the election board had possession and control over the premises at issue it looked at many factors.

The 25–foot zone referenced in Section 115.637(18) was one of several factors the *James* court discussed. It was not, however, a bright line test as interpreted by the Board and the trial court in the case *sub judice*. In its suggestions in support of its motion for summary judgment, the Board discussed *James* and stated:

Therefore, if Plaintiff Thomas fell outside the 25–foot perimeter, she was on the Church's property. Conversely, if Plaintiff Thomas fell inside the 25–foot perimeter, she was on the Board's "property" on election day.

In its judgment, the court discussed *James* and stated:

Therefore, if Plaintiff Thomas fell outside the 25–foot perimeter from the outer door of the polling place, which is admitted by Plaintiff and confirmed by witnesses in the Findings of Fact, Plaintiff Thomas then did not suffer injury as a result of dangerous condition on the Defendant Board's "property" on the election day.

Both the Board and the trial court cited *James* for the proposition that an election board's property ends at the 25–foot perimeter referenced by Section 115.637(18). *James* did not hold this. It found that the election board did exert possession and control within the 25–foot perimeter; it did not address whether possession and control was exerted beyond the 25–foot perimeter.

The appropriate question is whether the Board exercised possession and control rising to the level of an ownership interest over the area where Ms. Thomas fell, wherever that may be. In *State ex rel. Div. of Motor Carrier and R.R. Safety v. Russell,* 91 S.W.3d 612 (Mo. banc 2002), the Missouri Supreme Court stated: "In order for property to be considered that of the sovereign for the purpose of waiver immunity under section 537.900.2, the sovereign must have the exclusive control and possession of that property." *Id.* at 616; *see also Rell v. Burlington Northern R. Co.,* 976 S.W.2d 518, 521–22 (Mo.App. E.D. 1998). Cases discussing the phrase in Section 537.600.1(2) that sovereign immunity is waived for "injuries caused by the condition of a public entity's property" examine whether the public entity had "ownership of a property interest which allows a public entity to control the property." *Dorlon v. City of Springfield,* 843 S.W.2d 934, 938 (Mo.App. S.D.1992)(stating that the reference to a public entity's property for purposes of sovereign immunity "clearly refers to ownership of a property interest which allows a public entity to control the property."); *see also Terry v. McIntosh,* 941 S.W.2d 595, 598 (Mo.App. W.D. 1997)("There is nothing that refutes the fact that Clay County did not own, control, or maintain the property where the accident occurred."); *Tillison v. Boyer,* 939 S.W.2d 471, 473 (Mo.App. E.D.1996)(examining whether a hospital had control over a tree located on privately owned property that fell on plaintiff while she was walking on hospital parking lot). In *James,* the court examined whether the election board had the authority and ability to "monitor the polling place, exclude unauthorized persons and generally, exercise control over the Fellowship Hall and the entrance, during the election proceedings." *James,* 844 S.W.2d at 519–20. However phrased, the appropriate test is whether the Board exerted possession and control rising to an ownership interest.

The Board's motion for summary judgment and the trial court's analysis was premised upon an interpretation of *James* that the 25–foot perimeter is a bright line test for control of "property." This is not the proper legal test for waiver of sovereign immunity. As it set forth and applied an erroneous statement of the law, the summary judgment must be reversed.

### Conclusion

*James* does not establish a bright line 25–foot perimeter test with respect to what constitutes an election board's property for purposes of sovereign immunity. The motion for summary judgment and trial court's entry of summary judgment were premised upon this narrow interpretation of *James.* The judgment is reversed.

All concur.