

# Missouri Court of Appeals
## Southern District
### Division Two

PAMELA S. ALLEN and
KELLY D. ALLEN,

    Plaintiffs/Cross-Appellants,

v.

STATE OF MISSOURI, 32nd JUDICIAL
CIRCUIT,

    Defendant/Cross-Appellant,

CAPE GIRARDEAU COUNTY and
CITY OF CAPE GIRARDEAU,
MISSOURI,

    Defendants/Respondents.

Nos. SD36319 & SD36328
Filed: December 29, 2020

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable Stephen R. Mitchell, Special Judge

**<u>AFFIRMED</u>**

The 32nd Judicial Circuit Court (the State) appeals from a judgment entered in a personal injury action brought by Pamela Allen and Kelly Allen (referred to individually by their given names and collectively as the Allens) after Pamela fell down stairs in the basement of a building occupied by the State to conduct all circuit court operations, including storage of the State's court records. On appeal, the State contends the trial court

erred by: (1) denying the State's post-trial motion for judgment notwithstanding the verdict (JNOV); and (2) giving an erroneous verdict-directing instruction to submit the State's liability. Finding no merit in either point, we affirm the judgment. The Allens' cross-appeal, which only sought relief if the State's points were granted, is moot and need not be addressed.

**Factual and Procedural Background**

One of the State's points contends the trial court erred by denying its post-trial motion for JNOV. To review that point, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Allens. *Bare v. Carroll Elec. Coop. Corp.*, 558 S.W.3d 35, 46 (Mo. App. 2018). All contrary evidence and inferences are disregarded. *Id*. The following summary of facts has been prepared in accordance with these principles.

This lawsuit was filed by the Allens against the State, Cape Girardeau County (County), and City of Cape Girardeau (City) to recover damages for personal injuries and loss of consortium arising from injuries to Pamela. The Allens' suit alleged that Pamela was seriously injured, and Kelly suffered a loss of consortium, when Pamela fell down the basement stairs at the Cape Girardeau Common Pleas Courthouse (the Courthouse).

The Courthouse is an historical building located in downtown Cape Girardeau. Constructed in 1854, the Courthouse is a multi-level structure with a basement area commonly referred to as "the dungeon." City owned the Courthouse upon its construction in 1854. In 1959, City deeded one-half of its ownership interest to County. In 1979, City and County entered into a lease agreement whereby City removed its offices and authorized County to occupy the entire space. The lease provided City with the right to inspect the

2

Courthouse and approve any alternations, but obligated County to maintain the Courthouse and make necessary repairs. County had made alterations to the Courthouse in the past.

County is required by law to provide "suitable quarters" for the State's circuit court. *See* § 478.035.[1] In 1991, County provided the Courthouse for use by the State for all court operations, including storage of court files. At that time, the State became the sole occupant of the Courthouse. Due to space shortages, the State began storing inactive files in the basement of the Courthouse at the direction of the circuit clerk. The basement area had not been modernized since the Courthouse was originally constructed, and it was dark and damp. To access the basement, a person had to descend a set of concrete stairs, which were believed to be original to the Courthouse.

The stairs were not uniform in size, varying in slope, riser height and tread depth. The treads were not level, sloped downward as much as nine percent, and were narrower than modern stairs. The tread depth varied from 8 inches to 9 ¼ inches, meaning to descend the stairway required walking at an angle because adult feet would not fit on the treads. The concrete nosing was chipped in some areas. The riser heights varied from 7 ¾ inches to 8 ½ inches. The stairway had one handrail, was illuminated by a single bulb, and had lower than normal headroom with pipes and wires running overhead. The door to the basement area had a lock installed by County employees at the direction of the circuit clerk. The stairway was locked most of the time. The State's clerks and County maintenance personnel were the only persons with keys to the entrance of the basement stairway. To

---

[1] All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2019).

access records stored in the basement, a person had to obtain a key from one of the State's court clerks.

The court staff did not have time to retrieve files for title companies, so a clerk would have to provide a key to a title company employee. Pamela had worked in the land title business for many years. Her employer, United Land Title, required access to court files and judgments to process land sales and transfers. Some of the court records Pamela needed for her job were in the basement of the Courthouse.

On August 26, 2013, Pamela received a request to retrieve "a couple of judgments." The records she needed were in the basement of the Courthouse. She went to the Courthouse and requested a key to the basement from a State's deputy clerk. Pamela was told by the clerk to "grab the key." Pamela went to the entrance of the stairway to unlock the basement door. There were no warning signs posted on or near the basement doorway. After unlocking the door, Pamela began slowly descending the stairs at an angle because her feet did not fit on the stair treads. During her descent, she gripped the handrail. She looked up to make sure there was no movement above her on the pipes and wires, and looked down as she stepped. At the second or third step from the landing, Pamela stepped with her left foot and felt it slip off the stair. She fell forward and hit the landing of the stairs. Pamela sustained several injuries, but the worst pain was in her left leg. She could not stand up, so she crawled to the top of the stairway. Upon reaching the entrance, she called out for the on-duty officer, who responded.

Pamela was treated at the hospital emergency room and diagnosed with a broken left leg. Her leg was placed in a cast, and she was instructed to keep her left leg elevated as much as possible during her recovery.

On September 7, 2013, Pamela was at home. She began having significant pain in her chest and back, and experienced breathing difficulties. She called 911 and was taken to the hospital. There, she was diagnosed with a deep vein thrombosis in her left leg and an acute saddle embolus. She had suffered a pulmonary infarction, which caused part of her lung tissue to die. She was placed on blood thinners, and a filter was implanted to prevent further clots from traveling up her left leg. She was hospitalized for 12 days.

Shortly after Pamela's injury, County Commissioner Paul Koeper contacted the State and expressed his concern that the State was allowing "any citizens going down into the basement with the narrow steps and low ceiling unsupervised." Circuit Clerk Patti Wibbenmeyer provided the following response by email:

> Although I realize it's not a good idea to let the title companies go down in the basement, it doesn't reduce the possibility of an accident by having a member of our staff go down instead. The stairs are just one of the hazards. Climbing ladders down there is another. We have had some small mishaps but nothing to go to the Dr about. We've been lucky until now. My biggest fear is having someone lay downstairs a long time before someone notices they are missing.

Circuit Clerk Wibbenmeyer agreed that the court records should be removed from the Courthouse, and they were placed in the Archive Center in Jackson, Missouri.

Thereafter, the Allens sued the State, County, and City to recover damages for Pamela's personal injuries and Kelly's loss of consortium. In relevant part, the Allens' first amended petition alleged that Pamela was injured by a dangerous condition of the State's property.

The case was tried to a jury over three days in May 2019. At the close of the Allens' evidence, City's motion for directed verdict was granted because City did not control the basement. At the close of all the evidence, the State also moved for a directed verdict. One

ground was that the State was not aware that the stairs were in a dangerous condition. The State's motion was denied.

When the case was submitted to the jury, Instruction No. 7 was the verdict-director against County. Instruction No. 8 was the verdict-director against the State. In Verdict Form A, the jury apportioned 90% fault to the State and 10% fault to Pamela, and assessed her total damages at $475,000. The jury found against Kelly on his loss of consortium claim. In Verdict Form B, the jury assessed 0% fault to County. The court entered judgment: (1) in favor of Pamela and against the State in the amount of $427,500; and (2) in favor of City and County and against the Allens. The State filed a timely post-trial Rule 72.01(b) motion for JNOV, which reasserted the aforementioned ground presented at the close of all the evidence.

**Discussion and Decision**

The State appealed from the judgment and presents two points for decision. For ease of analysis, we will address the State's points in reverse order. Additional facts will be included below as we address these two points.

*Point 2*

In Point 2, the State contends the trial court erred in denying the State's post-trial motion for JNOV. The State argues that there was insufficient evidence to prove the State knew the stairs were a dangerous condition. We disagree.

We use the following standard of review to determine whether the trial court erred in denying the State's motion for JNOV:

> A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence. Whether the plaintiff made a submissible case is a question of law that this Court reviews *de novo*. To determine whether a directed verdict or judgment notwithstanding the

6

verdict should have been granted [an appellate court] applies essentially the same standard. To determine whether the evidence was sufficient to support the jury's verdict, an appellate court views the evidence in the light most favorable to the verdict. A motion for directed verdict or JNOV should be granted if the defendant shows that at least one element of the plaintiff's case is not supported by the evidence.

*Ellison v. Fry*, 437 S.W.3d 762, 768 (Mo. banc 2014) (citations omitted).

Sovereign immunity is waived for injuries caused by the dangerous condition of a public entity's property. *Ford v. Cedar County*, 216 S.W.3d 167, 170 (Mo. App. 2006). One element the Allens had to prove to make a submissible case against the State was that the "public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition." § 537.600.1(2); *see also* *Tillison v. Boyer*, 939 S.W.2d 471, 473 (Mo. App. 1996).

The State argues that the Allens did not make a submissible case because there was no evidence the State knew the stairs were in a dangerous condition. The gist of the State's argument is that: (1) Pamela had used the stairs many times before without issue; and (2) there were no other individuals who had problems with the stairs. That argument fails because it ignores our standard of review, which requires us to view the evidence in the light most favorable to the verdict and to disregard all conflicting evidence and inferences.

The Allens presented sufficient evidence to make a submissible case on the issue of notice of the dangerous condition. Viewed in the light most favorable to the verdict, the jury was presented with the following evidence. The basement stairs were not uniform in size. They varied in slope, riser height and tread depth. The treads were not level, sloped downward as much as nine percent, and were narrower than modern stairs. Because the tread depth varied from 8 inches to 9 ¼ inches, a person descending the stairway was required to walk at an angle because adult feet would not fit on the treads. The concrete

7

nosing was chipped in some areas.  The riser heights varied from 7 ¾ inches to 8 ½ inches.

The stairway had one handrail, was illuminated by a single bulb, and had lower than normal

headroom with pipes and wires running overhead.  These constituted physical defects in

the stairway.  *See **Boever v. Special School Dist. of St. Louis County***, 296 S.W.3d 487,

493 (Mo. App. 2009) (in order for property to be in a dangerous condition pursuant to

§ 537.600.1(2), "it must exhibit a defect that is physical in nature").  All of these problems

with the stairway had existed for many years prior to Pamela's fall.  The State used the

basement for storage of inactive court files and controlled public access to the stairway via

a key.  After Pamela's injury, Circuit Clerk Wibbenmeyer acknowledged in an email that:

> The stairs are just one of the hazards.  Climbing ladders down there is
> another.  We have had some small mishaps but nothing to go to the Dr about.
> We've been lucky until now.  My biggest fear is having someone lay
> downstairs a long time before someone notices they are missing.

This email showed the State had actual knowledge of the hazardous condition of the

stairway.  *See **Linton v. Missouri Highway & Transp. Comm'n***, 980 S.W.2d 4, 9 (Mo.

App. 1998) (MHTC had actual knowledge of dangerous condition at exit per prior report

about the danger from a citizen).  After Pamela's injury, Circuit Clerk Wibbenmeyer

removed the inactive files from the basement and transferred them to the Archive Center.

This evidence provided a sufficient basis to submit the issue of whether the State had actual

or constructive knowledge of the dangerous condition of the stairway.  Thus, the trial court

correctly denied the State's post-trial motion for JNOV.  Point 2 is denied.

*Point 1*

In Point 1, the State contends the trial court erred by giving Instruction No. 8

because that pattern MAI instruction misstated the substantive law of sovereign immunity.

The following additional facts are relevant to this point.

8

At the instruction conference, the Allens' counsel tendered Instruction No. 8 as the verdict-director against the State. This instruction stated:

Instruction No. 8

In your verdict, you must assess a percentage of fault to defendant State of Missouri, 32nd Judicial Circuit whether or not plaintiff was partly at fault if you believe:

First, defendant State of Missouri, 32nd Judicial Circuit either owned or controlled the Common Pleas Courthouse basement stairway, and

Second, the basement stairway was in a defective condition, and as a result the stairway was not reasonably safe, and

Third, defendant State of Missouri, 32nd Judicial Circuit knew or by using ordinary care could have known of this condition in time to bar use or remedy or warn of such condition, and

Fourth, defendant State of Missouri, 32nd Judicial Circuit failed to use ordinary care to bar use or remedy or warn of such condition, and

Fifth, as a direct result of such failure, plaintiff sustained damage.

The State's attorney objected to this instruction because the paragraph First language did not say that the State "exclusively" controlled the stairway. In response, the Allens' attorney stated that the language of paragraph First was taken verbatim from MAI 31.16.[2] The trial court overruled the objection and gave Instruction No. 8. As noted above, the jury returned a verdict in favor of Pamela and against the State in Verdict Form A.

On appeal, the State argues that Instruction No. 8 misstated the law because it failed to include a required finding by the jury that the State "exclusively" controlled the stairway. We disagree. We conclude that paragraph First of Instruction No. 8, which used the

_____

[2] All references to MAI 31.16 are to Missouri Approved Jury Instructions–Civil 31.16 (7th ed. 2012), unless otherwise specified.

9

language required by MAI 31.16 and its Notes on Use, did not misstate the law. Therefore, the trial court correctly refused to modify Instruction No. 8.

Whether the jury was properly instructed is a question of law which this Court reviews *de novo*. ***Chavez v. Cedar Fair, LP***, 450 S.W.3d 291, 294 (Mo. banc 2014); ***Coomer v. Kansas City Royals Baseball Corp.***, 437 S.W.3d 184, 191 (Mo. banc 2014). We will not reverse a judgment based upon instructional error unless it materially affected the merits of the action. ***Coomer***, 437 S.W.3d at 191. The party challenging the instruction must show that the offending instruction misdirected, misled or confused the jury, resulting in prejudice to that party. ***Id***.

"Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b); *see* ***Hervey v. Missouri Dept. of Corr.***, 379 S.W.3d 156, 159 (Mo. banc 2012); *see also* ***Karnes v. Ray***, 809 S.W.2d 738, 740 (Mo. App. 1991) (if an MAI is applicable to a particular case, its use is mandatory). Such mandatory use includes the Notes on Use for the instruction. *See* ***Clark v. Missouri & Northern Arkansas R.R. Co., Inc.***, 157 S.W.3d 665, 671 (Mo. App. 2004). "The giving of an instruction in violation of the provisions of this Rule 70.02 shall constitute error, its prejudicial effect to be judicially determined, provided that objection has been timely made pursuant to Rule 70.03." Rule 70.02(c); *see* ***Hervey***, 379 S.W.3d at 159.

Instruction No. 8 was patterned on Note on Use 2 of MAI 31.16. That Note states:

**2.** If there is a factual dispute about the ownership or control of the property, add: "First, defendant (*identify the public entity*) either owned or controlled the (*describe the property, such as "sidewalk", "manhole", "drainage ditch"*), and …". Then renumber the other paragraphs of the verdict

10

directing instruction. See *Walton v. City of Seneca*, 420 S.W.3d 640 (Mo.App. S.D. 2013); *Spielvogel v. City of Kansas City*, 302 S.W.3d 108 (Mo.App. W.D. 2009); *Thomas v. Clay County Election Board*, 261 S.W.3d 574 (Mo.App. W.D. 2008). Compare, *Randel v. City of Kansas City*, 467 S.W.3d 383 (Mo.App. W.D. 2015).

MAI 31.16, Note on Use 2 (2016 Revision). Here, control of the stairway was disputed, so the "owned or controlled" language had to be included in Instruction No. 8.

The State argues that paragraph First of Instruction No. 8 misstated the law on sovereign immunity because it did not say the State "exclusively" controlled the stairway. The State's argument assumes that "exclusively controlled" is the only phrase which would adequately communicate the nature of the required finding to lay jurors. We find no merit in this argument.

***Thomas v. Clay County Elec. Bd.***, 261 S.W.3d 574 (Mo. App. 2008), was one of the cases cited as support for the "owned or controlled" language in the Note on Use 2. There, an election board had leased church property to use as a polling location during an election. The plaintiff was injured when she slipped on ice at the church while attempting to vote in a February primary election. *Id*. at 575. Because the church was not owned by the election board, the question on appeal was what legal standard applied to the waiver of sovereign immunity in § 537.600.1(2) for a dangerous condition of the public entity's property. The western district of this Court held that, "[h]owever phrased, the appropriate test is whether the [election board] exerted possession and control rising to an ownership interest." *Id*. at 580.

The evidence favorable to the verdict was sufficient to support a finding that the State exerted possession and control of the Courthouse rising to the level of an ownership interest. The State had solely occupied and possessed the Courthouse for all court

11

operations, including storage of court files, since 1991. The inactive court files were stored in the basement at the direction of the circuit clerk. The circuit clerk also decided to have a lock installed on the door to the basement. To access records stored in the basement, a person had to obtain a key from one of the State's court clerks. Rather than requiring court staff to retrieve records from the basement, members of the public were given access to the basement as a time-saving measure. A court clerk had to provide a key to the basement for that to occur. Here, Pamela obtained the key from the State's deputy clerk. After Pamela's injury, Circuit Clerk Wibbenmeyer acknowledged in an email to a County commissioner that the stairway was hazardous. She removed the inactive court files from the basement and transferred them to the Archive Center in Jackson.

Based upon our review of the record, the State has failed to demonstrate that the "controlled" language in Instruction No. 8, included in accordance with Note on Use 2, misdirected, misled or confused the jury to the State's prejudice. *See **Coomer***, 437 S.W.3d at 191. Accordingly, Point 1 is denied.

*The Allens' Cross-Appeal*

The three points in the Allens' brief are all explicitly contingent on the State's points on appeal being granted. Since that did not occur, the Allens' points are moot and need not be addressed.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, C.J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR