**Susan H. WALTON, Plaintiff–Appellant,**

v.

**CITY OF SENECA, Defendant–Respondent.**

**No. SD 32205.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 7, 2013.

Motion for Rehearing and/or Transfer
to the Supreme Court Denied
Oct. 29, 2013.

Application for Transfer Denied
Dec. 24, 2013.

Patrick Martucci, Joplin, MO, for Appellant.

William J. Lasley, Carthage, MO, for Respondent.

DON E. BURRELL, J.

Susan H. Walton ("Plaintiff") appeals the judgment entered in accordance with a jury verdict in favor of City of Seneca ("City") on Plaintiffs personal injury suit for damages she alleged she suffered when she stepped into a City "water meter hole" that was located in a restaurant parking lot. Plaintiff claimed the "hole," a water meter vault, was City's property and that it constituted a dangerous condition, thereby qualifying as a statutory exception to the general rule that all money damages claims against municipalities are barred by sovereign immunity.

In two points, Plaintiff alleges the trial court erred by giving the jury an affirmative converse instruction ("the affirmative converse instruction") that misstated the law. Her first point asserts the affirmative converse instruction erroneously defined " 'property' " as "property over which [City] had 'exclusive control, possession, authority and the ability to oversee, monitor and to exclude unauthorized persons' " "because under the sovereign immunity waiver statute[,] [section] 53[7].600.1(2)[,] 'property' belongs to a public entity if the public entity 'actually owned' or 'exercised possession and control rising to the level of an ownership interest' over the property[.]" [1] Point II claims the converse instruction "did not submit an issue that, even if true, would defeat [Plaintiff's] claim since Plaintiff's verdict directors identified the dangerous condition as a 'water meter hole' " and the

converse instruction referred to a " 'water meter lid[.]' " Plaintiff acknowledges that we may only review her second claim for plain error as the claim "was not raised at the instruction conference."

Because we agree that the affirmative converse instruction misdirected the jury and there is a substantial indication that it resulted in prejudice to Plaintiff, we must reverse the judgment and remand the case for a new trial.[2]

### Applicable Principles of Review and Governing Law

■ "Whether a jury is properly instructed is a matter of law subject to *de novo* review." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 90 (Mo. banc 2010).

Use of the Missouri Approved Instructions is mandatory in any case where the instructions are applicable. Rule 70.02(b). But Rule 70.02 acknowledges that the MAI do not cover every individual case and, accordingly, allows for modification of the approved instructions or use of non-approved instructions. *See* Rule 70.02(b). Where an MAI must be modified or a non-MAI must be used to fairly submit the issues in a particular case, the modifications or the instruction "shall be simple, brief, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." *Id.; see also Lindquist v. Scott Radiological Group, Inc.*, 168 S.W.3d 635, 652 (Mo.App. E.D. 2005). The test for a non-MAI instruction is whether it follows the applicable

---

1. All statutory references are to RSMo Cum. Supp.2012. All rule references are to Missouri Court Rules (2013).

2. Because Plaintiff's first point requires a reversal and remand, and the alleged error referenced in her second point is unlikely to be

at issue upon a retrial, we do not address it. *See Liberty Fin. Mgmt. Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40, 53–54 (Mo. App. E.D.1984) (non-dispositive issue addressed "[b]ecause the issue will, in all likelihood, arise on retrial").

substantive law and can be readily understood by the jury.

*Doe v. McFarlane,* 207 S.W.3d 52, 74–75 (Mo.App. E.D.2006).

■ Sovereign immunity for "[i]njuries caused by the condition of a public entity's property" is "expressly waived" in section 537.600.1(2) when four conditions are established: 1) "the property was in dangerous condition at the time of the injury"; 2) "the injury directly resulted from the dangerous condition"; 3) "the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred"; and 4) "either a negligent ... act ... of an employee of the public entity ... created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition." *See also State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell,* 91 S.W.3d 612, 615 (Mo. banc 2002). Before reaching these elements, however, a plaintiff must first establish that "at the time of the alleged injury, the public entity actually owned the property or had exclusive possession and control over the property which rose to the level of an ownership interest." *Spielvogel v. City of Kansas City,* 302 S.W.3d 108, 112 (Mo.App. W.D.2009).

■ " 'When reviewing claimed instructional error, we view the evidence most favorably to the instruction, disregard contrary evidence, and reverse where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury,' and there is a substantial indication of prejudice." *Twin Chimneys Homeowners Ass'n v. J.E. Jones Constr. Co.,* 168 S.W.3d 488, 498 (Mo.App. E.D.2005) (quoting *Moore ex rel. Moore v. Bi–State Dev. Agency,* 87 S.W.3d 279, 293 (Mo.App. E.D.2002)). "Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits of the action." *Klotz v. St. Anthony's Med. Ctr.,* 311 S.W.3d 752, 766 (Mo. banc 2010). In contrast to that standard, when "determin[ing] if a submissible case was made by [a] plaintiff, this Court 'must view the evidence and inferences therefrom in a light most favorable to the plaintiff[ ] and disregard all contrary evidence.' " *Hiers v. Lemley,* 834 S.W.2d 729, 732 (Mo. banc 1992) (quoting *Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n,* 796 S.W.2d 369, 371 (Mo. banc 1990)). We will be viewing the evidence through each of these contrasting lenses as we address the respective arguments asserted by Plaintiff and City.

## Facts and Procedural Background[3]

■ We begin with a summary of the evidence most favorable to the submission

---

**3.** City's brief complains that Plaintiff's statement of facts is "one-sided and omits most of the trial evidence and testimony favorable to [City]." City is correct. For instance, a summary of the favorable testimony of Doyle Shields, Clarence Brodie, Dan Johnson, and Dr. David Ball, discussed *infra,* was not included. Plaintiff's reply brief contends, *inter alia,* that City's statement of facts, offered in dissatisfaction with Plaintiff's version, was itself faulty in that it included argument, was inaccurate, and included evidence that was irrelevant or was not admitted. City's brief did argue conclusions it suggested should be

drawn from the evidence under its main heading "STATEMENT OF FACTS," including that City "asserts that [P]laintiff's evidence was insufficient to establish a submissible case that [City] had either actual or constructive notice of any dangerous condition of the meter, vault, and cover, and [City] asserts that [Plaintiff] in fact has judicially admitted the lack of notice issue by her answers to interrogatories." City also pointed out evidence which was not admitted by the trial court. "The statement of facts shall be a *fair and concise* statement of the facts relevant to the questions presented for determi-

of the affirmative converse instruction. *See Twin Chimneys,* 168 S.W.3d at 498. On the evening of January 29, 2009, Plaintiff suffered a "[l]ateral tibial plateau fracture"—a break at the lower portion of the knee—while walking from her vehicle to "Barney's Kitchen," a restaurant in Seneca ("the restaurant"). No one witnessed Plaintiff's fall, but her husband was with her, and as he was locking the doors to their vehicle, he heard his wife "scream." He went "around the front of the vehicle, and there she was on the ground."

The following day, the then-Director of Public Works, Doyle Shields,[4] and Clarence Brodie, then the Superintendent of Public Works, "went down to [the restaurant] and [they] looked the meter over[.]" Mr. Brodie agreed that the water meter vault "was in an unusual location, next to a sidewalk where vehicles park and the public walks[.]"

After talking with the restaurant owner, Mike Bailey, City "put one of them [sic] parking block things … in front of the meter." Mr. Shields could not have put a parking block there before Plaintiff fell because City did not "own that property." Mr. Bailey also "agree[d] that a restaurant owner ought to be responsible for inspections around the walkways[.]" Mr. Bailey said that sometime after the accident, he put an orange sawhorse over the meter lid and he did not ask City's permission to put it there because, as the lessee of the property, he thought he had the right to do it.

Mr. Brodie testified that after the event in question, the water meter lid was "changed out" at the request of his department, but his understanding was that the actual request had come from the restaurant owner. City's records indicated that the restaurant's meter was last read before the accident on January 8 or 9 and that there was no "re-reading" of that meter in January.

Plaintiff submitted alternative verdict directors, Instruction No. 7 and Instruction No. 8. Instruction No. 7 read:

> Your verdict must be for [P]laintiff if you believe:
>
> First, the water meter hole in the parking lot at [the restaurant] did not have a heavy duty lid, and as a result the water meter hole was not reasonably safe, and
>
> Second, [City] knew or by using ordinary care could have known of this condition in time to remedy, barricade or warn of such condition, and
>
> Third, [City] failed to use ordinary care to remedy, barricade or warn of such condition, and
>
> Fourth, such failure directly caused or directly contributed to cause damage to [P]laintiff.
>
> *[U]nless you believe [Plaintiff] is not entitled to recover by reason of [the affirmative converse instruction].*

---

nation *without argument."* Rule 84.04(c). (Emphasis added.) "In determining the propriety of the trial court's judgment, evidence not presented to the jury should not be considered." *Acetylene Gas Co. v. Oliver,* 939 S.W.2d 404, 409 (Mo.App. E.D.1996). "We may exercise our discretion to dismiss an appeal due to briefing errors 'where the deficiencies impede disposition of the merits of the appeal.' " *Wong v. Wong,* 391 S.W.3d 917, 918 (Mo.App. E.D.2013) (quoting *City of Perryville v. Brewer,* 376 S.W.3d 691, 694

(Mo.App. E.D.2012)). Neither party claims that our consideration of the merits is impeded by the other's briefing deficiencies nor do they request affirmative relief. Finding no material impediment to a review on the merits, we exercise our discretion to review the point.

4. Mr. Shields was also the Seneca Police Chief at the time of the accident.

(Italicized text represents handwritten text.)

Instruction No. 8 stated:

Your verdict must be for [P]laintiff if you believe:

First, the water meter hole was not properly covered, and as a result the water meter hole was not reasonably safe, and

Second, such condition was created by an employee of [City] within the course and scope of employment, and

Third, the employee was thereby negligent, and

Fourth, such negligence directly caused or directly contributed to cause damage to [P]laintiff.

*[U]nless you believe [Plaintiff] is not entitled to recover by reason of [the affirmative converse instruction].*

(Italicized text represents handwritten text.)

The following record was made on the affirmative converse instruction.

[The Trial Court]: Okay. Then [the affirmative converse instruction], that was submitted by [City]. And we took out the last three words after "unauthorized persons," after being submitted to the jury that [City] had asked "at all times," and we crossed that out.[5]

[Counsel for Plaintiff]: Yeah. Your Honor—

[The Trial Court]: Do you want to argue that, or what?

[Counsel for Plaintiff]: Yeah. [Plaintiff] does object to the giving of [the affirmative converse instruction] at all as

incorporated by reference with our trial brief on the same issue.[6] The concession of "at all times" was to try and make it less misleading or offensive, but we still preserve our objection to it being offered at all.

[Co-counsel for Plaintiff]: And the reason for that is for the reasons incorporated in the trial brief that we submitted to the Court. It is adding a term to the MAI regarding the sovereign immunity waiver that is not in the MAI. It's also asking for a definition. It's including a definition in there, which is not consistent with the cases—the more recent cases, specifically *Thomas v. Clay County Election Board,* ... and also *James v. Farrington* .... Those cases discussed what the definition of property of a public entity is. And under the statute for sovereign immunity, that's the words the statute uses is public entities [sic] property or property of a public entity. And these cases say that that is defined either as actual ownership or exercising possession and control rising to an ownership interest. One definition that the court gave in Thomas, and also quoting from James, was the, quote, authority and ability of the public entity to monitor the property, exclude unauthorized persons, and generally exercise control. I think the definition that they have submitted goes far beyond what the case is in addition to the other objections I lodged.

[The Trial Court]: Okay. I'll submit [the affirmative converse instruction] as

---

**5.** The trial court's reading of the jury instructions was not included in the transcript, and the jury instructions included in the record on appeal appear to be the court's working copies, not the actual written instructions provided to the jury for its deliberations.

**6.** Although the record indicates that the trial brief was "filed" with the trial court, it was not included in the record on appeal.

I've modified it by knocking off the two last words.

The affirmative converse instruction stated:

Your verdict must be for [City] if you believe that the water meter lid was not the property of [City] as the term property is defined in these instructions.

The term "property" as used in this instruction means property over which [City] had exclusive control, possession, authority and ability to oversee, monitor and to exclude unauthorized persons.

After the jury returned its verdict in favor of City, Plaintiff filed a motion for new trial that included the following objection: "The [trial c]ourt erred in giving [the affirmative converse instruction], a non-MAI instruction, that misstated the definition of 'property' under the sovereign immunity waiver of [section] 537.600.1.2[.]" The argument in support of this objection asserted that the definition was restricted to "exclusive control, possession, authority and ability to oversee, monitor and to exclude unauthorized persons" and did not permit a finding of "property" based upon City "actually own[ing]" the property. The argument also asserted that the definition was "overly narrow and restrictive" because the appropriate definition "simply mean[s] possession and control rising to the level of an ownership interest." Plaintiff's motion for new trial was denied, and this appeal timely followed.

## Analysis

### Point I—Narrow Definition of Property in the Converse Instruction

Plaintiff's first point contends the trial court erred in giving the affirmative converse instruction because its definition of property was that over which City "had 'exclusive control, possession, authority and the ability to oversee, monitor and to exclude unauthorized persons[.]'" City first asserts that Plaintiff's objection was different and vague at trial. We disagree. The trial objection was a protest to the entire instruction, and it specifically relied upon some of the same case law now raised in Plaintiff's brief.

City also complains that Plaintiff offered no substitute instruction, but it cites no cases indicating the existence of any such requirement in the context of the submission of an affirmative converse instruction, and we are not aware of any. It instead cites only the general proposition that "failing to request a modified instruction can be considered in determining whether an instruction is prejudicial." *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 329 (Mo.App. W.D.2000). City also cites *City of Kennett v. Akers*, 564 S.W.2d 41, 50 (Mo. banc 1978), where the *defendant* appealed a damages instruction as being too general, and the court stated that "[i]f defendant felt it too general, it was incumbent upon him to submit an explanatory or modifying instruction." Here, Plaintiff objected to the giving of an affirmative converse instruction, an instruction which "is not favored[.]" *Hiers*, 834 S.W.2d at 735. Plaintiff then made specific objections as to why the affirmative converse instruction was defective.

Finally, City contends that "claims of instructional error were irrelevant because the Plaintiff failed to make a submissible case[,]" asserting deficiencies of proof as to Plaintiff's two theories of liability. *See Hiers*, 834 S.W.2d at 732 ("If no submissible case was made, any error in giving the converse instruction was inconsequential"). To address this claim, we will now view the relevant evidence in the light most favorable to Plaintiff.

Plaintiff's first theory of liability was that City knew the water meter vault

was unsafe and failed to remedy it. The following evidence supported that theory. Plaintiff's husband testified that immediately after he heard his wife scream, he observed that her leg "was in a hole." He said her "right leg was disappeared [sic]. She had no right leg up to her knee. And her left leg was down on the ground—her knee was on the ground." The responding police officer's report noted that Plaintiff advised that "she stepped into a man hole [sic] . . . [and] her leg was down inside the hole."

The jury also heard evidence that two witnesses saw that the lid to the water meter hole was dislodged or "not flush" shortly after Plaintiff fell; a surgeon testified that a slip on the ice [7] was "extremely unlikely" to cause the type of fracture suffered by Plaintiff; an engineer testified that if a vehicle drove over "a light-duty lid" then it could become dislodged (and he understood that the lid on the water meter was not a "heavy-duty lid"); and Mr. Brodie admitted that he knew before Plaintiff's accident that the water meter hole "was in an unusual location" such that "vehicles were driving on or over that lid"

and it did not have a heavy-duty lid. And while he explained the limitations of his prior view, Mr. Brodie also acknowledged that he had previously testified in a deposition that before Plaintiff's accident he knew that a water meter lid could "either be dislodged or broken" if a vehicle drove over it. This evidence was sufficient to submit Plaintiff's first theory—as set forth in Instruction No. 7—to the jury.[8]

Having rejected City's claim that any instructional error was irrelevant because Plaintiff failed to make a submissible case, we must next determine whether the affirmative converse instruction misdirected the jury. Plaintiff asserts the proper definition of "property" in the context of her case is that which is " 'actually owned' " or property over which City " 'exercised possession and control rising to the level of an ownership interest[,]' " citing *Spielvogel*, 302 S.W.3d at 112, and *Thomas v. Clay Cnty. Election Bd.*, 261 S.W.3d 574, 580 (Mo.App. W.D.2008).[9] Plaintiff maintains that it was error both to fail to include actual ownership as a means of attributing property to City and to include "exclusive control, possession, authority

---

**7.** City's main theory of defense—other than that the water meter vault was not its property—was that Plaintiff could not have fallen into the water meter vault because it, along with the rest of the parking lot, was covered at the time by a thick layer of snow and ice.

**8.** Plaintiff's alternative liability theory was that a City employee negligently created the unsafe condition by not properly covering the hole. Plaintiff argued that testimony by Mr. Bailey that a City truck was at the restaurant "earlier in the daytime" on January 29, 2009 was sufficient to allow the jury to reasonably infer that the water meter was read the day of the accident and that the City employee reading the meter left the lid ajar. Mr. Bailey subsequently admitted, however, that he checked the walkway later in the day, after he saw City's truck, and he did not observe that the water vault lid was out of place. In any event, we do not need to determine whether

Plaintiff made a submissible case on this alternative theory as we find that she made a submissible case on her first theory.

**9.** Plaintiff's argument in support of her point also contends that "[t]he definition of property in the instruction is simply not necessary." She goes on to argue that "property" was not required to be defined in a case between private parties concerning a fall on a parking lot, citing *McMullin v. Politte*, 780 S.W.2d 94, 95–96 (Mo.App. E.D.1989). This issue was not raised in her point. "We only address questions stated in the points relied on. *Smith v. Taylor[-]Morley, Inc.*, 929 S.W.2d 918, 923 (Mo.App. [E.D.] 1996). Issues raised in the argument portion of the brief which do not appear in the points relied on are not preserved for appellate review." *Benoit v. Missouri Highway & Transp. Comm'n*, 33 S.W.3d 663, 672 n. 4 (Mo.App. S.D.2000).

and the ability to oversee, monitor and to exclude unauthorized persons" as the definition because it provided "overly narrow and restrictive" language. We agree.

In *Spielvogel,* summary judgment was affirmed in favor of the city after the trial court found "that the [c]ity did not own the property at the time of the accident and that the [Missouri Highway and Transportation Commission ("the commission") ] exclusively controlled the property." 302 S.W.3d at 110. The court reasoned that it did not matter that the deed from the city to the commission was actually recorded after the accident in question because the city had already agreed to transfer control, the deed had been delivered, and the city had performed its obligations under the agreement. *Id.* at 112. Further, the plaintiffs "admit[ted] that [the commission] had exclusive control, possession, and the responsibility to maintain the bridge complex on [the date of the accident]." *Id.* at 113.[10]

The *Thomas* opinion observed that *James* "broadened the definition of 'property' for purposes of the sovereign immunity statute" so that actual ownership " 'was not necessary' " and property could also be that which was under the public entity's " 'possession and control of premises[.]' " 261 S.W.3d at 579 (quoting *James,* 844 S.W.2d at 520). Thus, it was held that the trial court erred in granting summary judgment in favor of the county simply because the accident occurred beyond 25 feet of a polling place (inside a church) the county election board had leased for the purpose of conducting a presidential primary. *Id.* at 580. The court quoted language from our high court's opinion in *Russell,* 91 S.W.3d at 616, that " '[i]n order for property to be considered that of the

sovereign for the purpose of waiver [of] immunity under section 537.900.2[sic], the sovereign must have the exclusive control and possession of that property.' " *Id.*

In *Russell,* the Division of Motor Carrier and Railroad Safety ("the division") did "not own the road, crossing, tracks or transmission lines" where an accident occurred, and the Court found that "[p]rivately owned property that is merely regulated by a government agency or entity is not 'public property' and, accordingly, is not within the statutory exception to sovereign immunity." 91 S.W.3d at 616. While the Court acknowledged the division's regulatory role, it found that the division did not "have exclusive control or possession of the ... railroad crossing." *Id.*

The *Thomas* opinion also quoted language from other cases focused on whether the public entity's interest in the property was one that gave it control over the property. 261 S.W.3d at 580. *See Dorlon v. City of Springfield,* 843 S.W.2d 934, 938 (Mo.App. S.D.1992) (use of "property" in section 537.600.1 "clearly refers to ownership of a property interest which allows a public entity to control the property"); *Terry v. McIntosh,* 941 S.W.2d 595, 598 (Mo.App. W.D.1997) (court looked to evidence showing that the "[c]ounty did not own, control, or maintain the property where the accident occurred"). The *Thomas* opinion then concluded: "[h]owever phrased, the appropriate test is whether the [election b]oard exerted possession and control rising to an ownership interest." *Id.*

In *Phelps v. City of Kansas City,* 371 S.W.3d 909, 919–20 (Mo.App. W.D.2012), the court considered whether the plaintiffs

---

**10.** The court noted, in dicta, that due to the extent of the commission's interest, "it [was] questionable whether the [c]ity could be held

liable even if it did own the property." *Id.* at 113 n. 2.

had stated a cause of action based upon waiver of sovereign immunity and found that the allegation that the city had possession and control over a storm water drainage system, including a ditch and inlet pipe located on private property, was a sufficient allegation to invoke the waiver of sovereign immunity. The opinion brought forward *Thomas's* quotation of the language from the *Russell* opinion requiring " 'exclusive control and possession of that property[,]' " *id.* at 917, but it also quoted from *James* and *Thomas* for the proposition that the definition of property had been broadened so that ownership was not required. *Id.* at 918. The court found that the petition "averred facts that the [c]ity 'exercised possession and control *rising to the level of an ownership interest* over the area in question.' " *Id.* at 919–20.

City strongly contested the fact presumed by the MAI instruction that the water meter vault was its property, and it is clear from the case law that whether the dangerous property was in fact the property of the public entity is a threshold issue that must be established. *Spielvogel,* 302 S.W.3d at 112. As a result, City was entitled to a modification of the instructions in such a way as to ensure that the jury was required to find that the water meter vault was City's property before

Plaintiff could recover on her damages claim.

From our review of the applicable case law, we find that, at the very least, an accurate definition of "property" for purposes of a waiver of sovereign immunity by a public entity would include property actually owned by the public entity. *See id.* The affirmative converse instruction was erroneous and misdirected the jury because it did not include actual ownership as a means of proving that the water meter vault was City's property.[11]

Having found that the instruction was erroneous and misdirected the jury, we must next determine whether the error requires a reversal. To be entitled to such relief, Plaintiff must show "a substantial indication of prejudice." *Twin Chimneys,* 168 S.W.3d at 498. In attempting to do so, Plaintiff stresses that City asserted in its closing argument that it could not have *exclusive control* "of one of the busiest places in Seneca" (emphasis added).

Plaintiff also claims that she "offered substantial evidence of City's actual ownership of the water meter vault." Plaintiff's exhibits detailing the following sections from City's Municipal Code were admitted into evidence: Sections 705.030,

---

11. We note that while "[a]n affirmative converse instruction is appropriate where the verdict director assumes as true or omits a disputed ultimate issue[,]" *Hiers,* 834 S.W.2d at 735, its use is fraught with peril.

[T]he affirmative converse instruction is not favored for a number of reasons. Such instruction, like the true converse, is an accessory and unnecessary to the instruction package. An affirmative converse instruction tends to resemble a prohibited "sole cause" instruction. The affirmative converse instruction is often merely a resubmission of the issues found in the verdict director. It requires evidentiary support to justify its submission. In addition, it

has the propensity to violate the general premise of the approved instruction format by including unnecessary evidentiary details instead of ultimate issues. Rule 70.02(a). These potential problems have led some experts to squarely advise, "Do not use the affirmative converse instruction." [E.] Thomas, [Converse Instructions Under MAI,] 42 Mo.L.Rev. [175,] 206 [(1977)]."

*Id.* at 735–36. One alternative is to object to a proffered "verdict director that omits an essential ultimate issue; the defendant is entitled to make an appropriate objection to such a verdict director and stand on that objection." *Id.* at 735 n. 3.

705.040(F), 705.050(A) and (D), 705.090(A), 705.100 and 705.110(A). The provisions provided for the following. City's ability to read "all water meters[.]" Section 705.030. When service was discontinued, "the department employees [would] take charge of the meter belonging to [City]." Section 705.040(F). "City shall at all reasonable hours have full access to the consumer's premises for the purpose of ... examining ... the meter.... [and to] read said meter[.]" Section 705.050(D). "No unauthorized person shall uncover ... or disturb any public water system or appurtenance" without "a written permit[.]" Section 705.090(A). A person could be arrested for tampering with "equipment which is part of the public water system." Section 705.100. And "[t]he Superintendent and other duly authorized employees of [City]" were authorized to enter onto "all properties" for certain purposes, including inspection and testing. Section 705.110(A).

Apart from the impact of City's closing argument, the jury was misdirected by the fact that the verdict director's tail—"*[u]nless you believe [Plaintiff] is not entitled to recover by reason of [the affirmative converse instruction]*"—allowed the jury to find in favor of City without regard to whether Plaintiff had proven the elements of her claim on the basis of a condition that was erroneously defined. (Italicized text represents handwritten text.) In other words, a substantial showing of prejudice exists because even if the jury found in Plaintiff's favor on each element set forth in Instruction No. 7, it would still be directed to find against Plaintiff if it found— based upon the erroneous definition set forth in the affirmative converse instruction—that the water meter vault was not the property of City.

As a result, the affirmative converse instruction both misdirected the jury and there is a substantial indication that it resulted in prejudice to Plaintiff. Point I is granted. The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

GARY W. LYNCH and MARY W. SHEFFIELD, JJ., concur.

