

# SUPREME COURT OF MISSOURI
## en banc

PAMELA S. ALLEN and )
KELLY D. ALLEN, )
                )
    Cross-Appellants, )
                )
v. )      No. SC98929
                )
STATE OF MISSOURI, 32nd )
JUDICIAL CIRCUIT, )
                )
    Cross-Appellant, )
                )
       and )
                )
CAPE GIRARDEAU COUNTY and )
CITY OF CAPE GIRARDEAU, MISSOURI, )
                )
    Respondents. )

*Opinion issued January 11, 2022*

## APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY
**The Honorable Stephen R. Mitchell, Judge**

The State of Missouri, 32nd Judicial Circuit ("State") appeals from a judgment entered in favor of Pamela Allen ("Allen") and her husband (collectively the "Allens") who sued the State, Cape Girardeau County ("County"), and the City of Cape Girardeau ("City") after Allen fell down a flight of stairs in the Common Pleas Courthouse in Cape Girardeau ("Courthouse"). On appeal, the State asserts the circuit court misapplied the law

regarding the waiver of sovereign immunity. Specifically, the State claims the circuit court erred in: (1) overruling the State's post-trial motion for judgment notwithstanding the verdict ("JNOV") because there was insufficient evidence the stairs were in a dangerous condition; therefore, waiver of sovereign immunity was not justified; and (2) giving an erroneous jury instruction regarding waiver of sovereign immunity. The State's first claim lacks merit, as the Allens presented a submissible case that the stairway was a dangerous condition of which the State was sufficiently aware to waive sovereign immunity. The State's second claim, however, is meritorious. Because the submitted jury instruction regarding waiver of sovereign immunity did not accurately state the law, this Court vacates the circuit court's judgment as to the State and County.

In a cross-appeal, the Allens also allege, among other claims, the circuit court erroneously applied the law of sovereign immunity. Specifically, the Allens claim the circuit court erred in: (1) sustaining the City's motion for directed verdict because the City held an undivided one-half ownership interest in the Courthouse and this ownership interest was sufficient to subject the City to waiver of its sovereign immunity; (2) overruling the Allens' motion for new trial because the judgment entered in the County's favor was against the weight of the evidence in that the County also held an undivided one-half interest in the Courthouse; and (3) overruling the Allens' motion for new trial because the judgment entered against Kelly Allen on his claim of loss of consortium was against the weight of the evidence. The Allens' first claim is meritorious. Because the City possessed an ownership interest in the Courthouse, it was unnecessary for the Allens to introduce evidence that the City exercised "exclusive control and possession" over the stairwell to

2

establish the Courthouse stairwell was the City's property. For this reason, the Court vacates the circuit court judgment entered in the City's favor. The Allens' second claim is moot. Because the jury was improperly instructed on the law of sovereign immunity for the reasons claimed by the State, the State is entitled to further proceedings in which the liability of the State and the County is properly considered with the correct understanding of the law. This Court, therefore, need not address the Allens' claim that the judgment entered in the County's favor was against the weight of the evidence. Finally, this Court will not review the Allens' third claim regarding the judgment entered against Allen's husband, as this argument was never presented to the circuit court and, therefore, was not preserved.

In summary, the circuit court's judgment is affirmed as to Allen's husband's loss of consortium claim. In all other respects, the judgment is vacated. The case is remanded for the circuit court to consider the liability of all three defendants in a manner consistent with this opinion.

**Factual and Procedural History**

The Courthouse is an historic building located in Cape Girardeau. Built in 1854, the County and the City have held an undivided one-half ownership interest in the Courthouse since 1959. In 1979, the City and County entered into an agreement whereby the County may occupy the entire space and assumes all responsibility for maintenance and repairs. The agreement is still valid and preserves for the City the right to inspect the premises and withhold approval for any alterations. The County made the entire space

3

available for the State's use in 1991.[1]  Since then, the State has enjoyed sole occupancy of the Courthouse and uses it for court operations.  Pursuant to statute, however, the County, not the State, bears responsibility for obtaining the Courthouse space for the State and maintaining and repairing the Courthouse when necessary.[2]

On August 26, 2013, Allen, an employee of United Land Title, visited the Courthouse to retrieve "a couple of judgments" for a work assignment.  These court records were located in the Courthouse basement.  It was not the first time Allen gathered records from the Courthouse basement; she had done so on 50 or more occasions during her time at the title company.  The circuit court clerk had the County install a lock on the door, making the staircase and the basement inaccessible without a key.  Allen approached the deputy clerk to request a key; the clerk advised her to "grab the key" and retrieve the documents.  Allen collected the key, unlocked the door to the basement stairway, left the door slightly ajar to allow additional light to illuminate the dark staircase, and began to descend, gripping the single handrail.  A few steps from the bottom landing, Allen's foot slipped.  She fell, breaking her leg.  Allen crawled back up the stairs to call for help and was eventually transported to a hospital for her injuries.[3]

---

[1] Section 478.035 requires the County to provide the State with "suitable quarters" in which to conduct circuit court business.  All statutory references are to RSMo 2000.

[2] *See* § 478.035, *supra* n.1; s*ee also* § 49.310 ("[T]he county commission in each county in this state shall erect and maintain … a good and sufficient courthouse … and necessary fireproof buildings for the preservation of the records of the county….  In pursuance of the authority … the county commission may … construct, reconstruct, remodel, repair, maintain and equip the courthouse.").

[3] Shortly after she was treated for a broken leg and discharged, Allen returned to the hospital.  She was experiencing pain and breathing difficulties and was diagnosed with a

Allen and her husband sued the State, the County, and the City in a personal injury action. Allen claimed each kept the Courthouse staircase in a dangerous condition and should have either repaired the staircase or warned her it was hazardous. Allen sought damages for her injuries, and her husband brought a claim for loss of consortium. At the close of the Allens' evidence, the City, State, and County moved for directed verdict. Each argued it should not be liable for Allen's injuries because it did not have "exclusive control and possession" or "control" of the stairway and was unable to remedy or warn of any alleged defect.[4] Each further contended the stairs were not a dangerous condition rendering them liable for Allen's injuries. The circuit court sustained the City's motion but overruled the State's and County's motions. The Allens' claims then proceeded against the State and the County.

During the jury instruction conference, the State objected to Instruction No. 8, which sought a jury finding that the State "either owned or controlled" the Courthouse basement stairway. The State argued "owned or controlled"—language supplied by Missouri Approved Instruction ("MAI") 31.16 (8th ed.)—misstated the law, and the proper instruction should direct the jury to determine if the State had "exclusive control" over the stairway. The circuit court overruled this objection.

---

blood clot in her left leg and a blockage in her lung artery. As a result, part of Allen's lung tissue died. She was hospitalized for 12 days and placed on blood thinners to prevent future clots.

[4] At the end of its typed motion for directed verdict, the State included a brief handwritten note stating there was "[n]o evidence that the State controlled the property or specifically the Courthouse basement stairs." The City and the County both argued they lacked "exclusive possession and control" over the Courthouse.

Using two separate verdict forms, the circuit court instructed the jury to weigh the State, the County, and Allen's comparative fault.[5] In response to a question from the jury, the circuit court instructed the jurors they could find fault only for one of the defendants, the State or County, but not both. The jury returned verdicts holding the County zero percent at fault, the State 90 percent at fault, and Allen 10 percent at fault, assessing Allen's total damages at $475,000. The jury found against Allen's husband on his loss of consortium claim. Following the jury's verdict, the circuit court entered judgment for Allen against the State, for the City and County, and against the husband.

The State moved for a judgment notwithstanding the verdict ("JNOV"), mirroring the same arguments raised in its motion for directed verdict. The Allens also conditionally moved for a new trial, asking the circuit court to consider their motion in the event it found the State did not own or control the stairs and sustained the State's motion for JNOV. The Allens argued the judgments for the City and the County must be reversed if the court were to enter JNOV for the State because one of the three defendants must be liable. The Allens' conditional motion for JNOV, however, did not seek to set aside the verdict rejecting the husband's loss of consortium claim.

The circuit court overruled both parties' motions. The State appealed, asserting the staircase was not a dangerous condition and the circuit court erred in submitting Instruction No. 8. The Allens sought affirmance of the circuit court's judgment against the State but

---

[5] One verdict form allowed the jury to consider the comparative fault of Allen and the State; the other verdict form allowed the jury to consider the comparative fault of Allen and the County.

cross-appealed in the event this Court grants the State its requested relief.[6]  After the court

of appeals issued an opinion, this Court granted the State's application for transfer.[7]

**Analysis**

I.    The State's Appeal

The State raises two points on appeal.  Both involve the application of section

537.600.1(2), which waives sovereign immunity for injuries caused by the "dangerous

condition" of a "public entity's property."  Sovereign immunity is a common law judicial

doctrine barring suit against a government or public entity.  *See Metro. St. Louis Sewer*

*Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921 (Mo. banc 2016).

"[S]overeign immunity applies to the government and its political subdivisions unless

waived or abrogated or the sovereign consents to suit."  *Id.*  Section 537.600.1(2) waives a

public entity's sovereign immunity from liability for compensatory damages for negligent

acts or omissions for

> [i]njuries caused by the condition of **a public entity's property if the
> plaintiff establishes that the property was in dangerous condition at the
> time of the injury**, that the injury directly resulted from the dangerous
> condition, that the dangerous condition created a reasonably foreseeable risk
> of harm of the kind of injury which was incurred, and that either a negligent
> or wrongful act or omission of an employee of the public entity within the
> course of his employment created the dangerous condition or a public entity
> had actual or constructive notice of the dangerous condition in sufficient time
> prior to the injury to have taken measures to protect against the dangerous
> condition.

(Emphasis added).

---

[6] This Court consolidated these appeals into the present case.
[7] Article V, section 10 of the Missouri Constitution endows this Court with jurisdiction to grant transfer of an appeal after the court of appeals issues an opinion.

7

The State challenges the sufficiency of the evidence the Allens offered to demonstrate the "dangerous condition" of the stairs under section 537.600. The State also contests the validity of Instruction No. 8 with respect to how it interpreted the words "public entity's property" as used in section 537.600.1(2).

    a.    *Sufficiency of Evidence Demonstrating a Dangerous Condition and Notice*

In reviewing a circuit court's overruling of a JNOV, "[t]his Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). The State claims the circuit court erred in overruling its JNOV motion because there was insufficient evidence to support the jury's finding that (1) the staircase was in a dangerous condition (2) of which the State had actual or constructive notice.[8]

---

[8] This Court reviews both arguments in its discretion because the State's brief violating Rule 84.04(e) in that the argument goes well beyond the single error alleged in the point relied on. Pursuant to Rule 84.04(e), all arguments

> shall substantially follow the order of "Points Relied On." The point relied on shall be restated at the beginning of the section of the argument discussing that point. **The argument shall be limited to those errors included in the "Points Relied On."**

(Emphasis added). The argument section accompanying the State's point relied on pursues two separate and independent claims: (1) the staircase was not a dangerous condition; and (2) even if it was a dangerous condition, the State lacked actual and constructive notice of its existence. Either claim, if accepted, would warrant reversal. The first of these arguments does not conform to the State's point relied on, however, which is concerned only with the latter argument. The point relied on states:

> The trial court erred in not entering judgment notwithstanding the verdict prejudicing the State, because there was insufficient evidence to show that the State knew that the stairs to the basement were a dangerous condition, in that the evidence showed that the stairs were functional and were used regularly by State and County personnel, that no one, including Pamela, had

8

This Court reviews the evidence "in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences." *Id.* A jury verdict cannot be reversed because of insufficient evidence unless "there is a complete absence of probative fact to support the jury's conclusion." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 654 (Mo. banc 2019). Viewing the evidence in the light most favorable to the verdict, permitting Allen all reasonable inferences and disregarding all conflicting evidence and inferences, the evidence was sufficient to show the stairs were in a dangerous condition of which the State had actual or constructive notice.

Under section 537.600, a "physical defect in the sovereign's property and injuries directly stemming from that defect will subject the sovereign to tort liability." *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell*, 91 S.W.3d 612, 616 (Mo. banc 2002); *see also Maune ex rel. Maune v. City of Rolla*, 203 S.W.3d 802, 805 (Mo. App. 2006). A sovereign may also be subject to liability if the plaintiff was harmed by a "physical deficiency in the state's property which constituted a 'dangerous condition.'" *Alexander*

---

complained about the condition of the stairs, and prior to Pamela no one had fallen on the stairs.

"Rule 84.04(e) requires the argument to be limited to the errors included in the point relied on. [A]n argument not set out in the point relied on but merely referred to in the argument portion of the brief does not comply with the requirements of Rule 84.04(d) ... [and] is considered abandoned in this Court." *Holmes v. Union Pac. R.R. Co.*, 617 S.W.3d 853, 859 n.2 (Mo. banc 2021) (alterations in original) (internal quotation omitted). When a defective point does not impede a full consideration of the merits and gives adequate notice to this Court and the other parties of the contested issues, this Court may exercise its discretion to review the point. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997). Though this Court considers both of the State's arguments, it does so pursuant to this discretion.

*v. State*, 756 S.W.2d 539, 542 (Mo. banc 1988).  The Allens introduced evidence of multiple physical defects and deficiencies.  The staircase was illuminated by a single bulb and had limited headroom because of pipes and wires running overhead.  The concrete stairs were painted, and on some, the edges of the steps were chipped.  The steps were not level, sloped downward as much as 9 percent, and were narrower than those of modern stairs.  The steps also varied in length.  None provided a sufficient surface to fit an adult foot, causing Allen to descend with her feet at an angle, gripping the single handrail.  Such evidence was sufficient for the jury to find the existence of physical defects and deficiencies tantamount to a dangerous condition.

The State contends the stairs did not constitute a dangerous condition because they were an "open and obvious condition" of which Allen knew and appreciated.  This Court disagrees.  True, a "landowner is entitled to expect that invitees will exercise ordinary perception, intelligence, and judgment to discover open and obvious conditions, appreciate the risk they present, and take the minimal steps necessary to protect themselves." *Maune*, 203 S.W.3d at 805.  But even if Allen was familiar with the condition of the staircase, that awareness does not preclude a finding that the condition, nevertheless, was dangerous. "[W]hen the dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, a possessor of land does not breach the standard of care owed to invitees '**unless the possessor should anticipate the harm despite such knowledge or obviousness**.'" *Harris v. Niehaus*, 857 S.W.2d 222, 226 (Mo.

banc 1993) (emphasis added) (quoting Restatement (Second) of Torts, § 343A(1) (1965));[9]

*see also Huxoll v. McAlister's Body & Frame, Inc.*, 129 S.W.3d 33, 36-37 (Mo. App. 2004);

*Holzhausen v. Bi-State Dev. Agency*, 414 S.W.3d 488, 498 (Mo. App. 2013); *Hellmann v.*

*Droege's Super Mkt., Inc.*, 943 S.W.2d 655, 659 (Mo. App. 1997) (finding that, while an

icy parking lot was an open and obvious condition, the defendant supermarket should have

anticipated risk to customers and had a duty to warn or remedy the situation).

---

[9] Comment f to § 343A recognizes:

> There are … cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee[ ] … [may] fail to protect himself against it…. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

The illustration following Comment f is also instructive:

> 5. A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

Restatement (Second) of Torts § 343A cmt. f, illust. 5 (1965).

11

While the condition of the stairway may have been open and obvious, the State should have anticipated the harm that befell Allen. Neither party indicates there was a reasonable alternative path to access the court records in the Courthouse basement. This fact makes the present case distinguishable from others in which courts have declined to find dangerous a condition that was open and obvious because the plaintiff's path was not limited to a single point of entry or exit.[10] Because there was no evidence to suggest Allen had an alternative route to access the files, the State had reason to anticipate the defective, deficient stairs could harm Allen despite her familiarity with them. Ultimately, whether the condition of the stairs was open and obvious is not dispositive to liability but rather is a factor to weigh in determining whether she exercised due care and shared comparative fault. *See Hellmann*, 943 S.W.2d at 659; *see also* Restatement (Second) of Torts, § 343A(1), cmt. f (1965). For these reasons, the Allens presented sufficient evidence to establish the stairway was a dangerous condition under section 537.600.

The evidence was also sufficient to demonstrate the State had sufficient notice of the dangerous condition of the stairwell. Viewing the evidence in the light most favorable to the jury's verdict, the Allens introduced evidence of an April 2013 e-mail exchange between a county commissioner and the secretary to the presiding judge of the 32nd circuit

---

[10] In *Huxoll*, 129 S.W.3d 33, for example, the court of appeals found a pile of scrap metal behind a locked exit door was an open and obvious danger as a matter of law and the business owner had no duty to protect invitees like the plaintiff. The court reasoned there was no reason the business should have anticipated the invitee would exit through a locked door and walk over a pile of sheet metal when he could have exited through other obvious doors or simply could have asked an employee to move cars that were blocking other exits. *Id*. at 36.

in which the commissioner stated he believed it would be "unsafe" to allow a group to tour the basement. Other evidence demonstrated State employees referred to the basement as "the dungeon." Such evidence suggests the State had actual notice that the stairs to the basement could be hazardous.

Even assuming the State lacked actual notice of the condition of the staircase, this Court has previously found similar facts sufficient to establish constructive notice. *See e.g., Hensley v. Jackson Cnty.*, 227 S.W.3d 491 (Mo. banc 2007). In *Hensley*, this Court found Jackson County lacked sovereign immunity from a suit initiated by a plaintiff injured in a car accident caused by a downed stop sign. *Id.* at 497. The plaintiff introduced evidence showing the stop sign had been leaning at a 45-degree angle for the duration of the month leading up to the accident, was down completely in the three days before the accident, and the county's employees frequented the area while the stop sign was in such condition. *Id.*

Here, the State has occupied the Courthouse since 1991. The State stored hundreds of boxes of its own records in the basement. Presumably, the State used the staircase to put the court records in the basement and to access the records when necessary. Aside from its own use, the State directed some of its visitors, like Allen, to use the stairs themselves. The State had sufficient time and opportunity to become aware of the

13

condition of the stairs, and it is reasonable to charge the State with constructive notice. This point is denied.[11]

b. *Instructional Error and the Meaning of "Public Entity's Property" Under Section 537.600*

The State further contends the circuit court erred in giving Instruction No. 8 because that instruction—using the language from the pattern MAI instruction—misstated the law regarding the waiver of sovereign immunity under section 537.600 for injuries caused by dangerous conditions on a public entity's property. The instruction as given stated:

> In your verdict, you must assess a percentage of fault to defendant State of Missouri, 32nd Judicial Circuit whether or not plaintiff was partly at fault if you believe:
>
> First, defendant State of Missouri, 32nd Judicial Circuit **either owned or controlled** the Common Pleas Courthouse basement stairway, and
>
> Second, the basement stairway was in a defective condition, and as a result the stairway was not reasonably safe, and
>
> Third, defendant State of Missouri, 32nd Judicial Circuit knew or by using ordinary care could have known of this condition in time to bar use or remedy or warn of such condition, and
>
> Fourth, defendant State of Missouri, 32nd Judicial Circuit failed to use ordinary care to bar use or remedy or warn of such condition, and
>
> Fifth, as a direct result of such failure, plaintiff sustained damage.

---

[11] This opinion does not decide whether the Allens presented a submissible case as to the other elements of section 537.600.1(2), particularly whether the Allens submitted sufficient evidence to establish the State had exclusive control or possession of the stairway. *See infra* Part I.b.

14

(Emphasis added). The State avers "owned or controlled" is inadequate because the case law suggests the proper standard was whether it owned or held "exclusive control and possession" of the property.[12]

"Whether a jury was instructed properly is a question of law that this Court reviews *de novo*." *Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 186 (Mo. banc 2019). Instructional error does not warrant vacating the judgment unless the challenging party also shows: "(1) the instruction as submitted misled, misdirected, or confused the jury; and (2) prejudice resulted from the instruction." *Fleshner*, 304 S.W.3d at 90-91.

Because the validity of Instruction No. 8 hinges on whether it accurately interpreted "public entity's property" as used in section 537.600.1(2), principles of statutory interpretation govern the analysis. "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019). Statutory provisions waiving

---

[12] The Allens contend the State's instructional error claim was not properly preserved for appellate review. Specifically, the Allens contest the adequacy of the State's objection to the instruction, asserting it lacked the requisite specificity to enable the circuit court to understand and consider the complaint it lodged. This Court disagrees. Rule 70.03 provides "[n]o party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The Rule further states, "[c]ounsel shall make specific objections to instructions considered erroneous." *Id.* During the instruction conference, the State contested the jury instruction claiming it failed to follow the caselaw indicating the standard was "exclusive possession and control." Such an objection gave the circuit court a clear, distinct idea of the basis for the objection as well as the alternate language requested. Accordingly, the objection was sufficient to preserve the issue for review.

15

sovereign immunity are strictly construed. *See Bartley v. Special Sch. Dist.*, 649 S.W.2d 864, 868 (Mo. banc 1983), *superseded on other grounds by* § 537.600. This Court, therefore, interprets the language of section 537.600 by "presum[ing] nothing that is not expressed." *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo. banc 2014).

In determining the scope of the phrase "public entity's property" in section 537.600.1(2) when the public entity lacks actual ownership but has possession of the property, the court of appeals has noted: "The appropriate question is whether the [defendant] exercised possession and control rising to an ownership interest[.]" *Thomas v. Clay Cnty. Election Bd.*, 261 S.W.3d 574, 580 (Mo. App. 2008); *see also Dorlon v. City of Springfield*, 843 S.W.2d 934, 938 (Mo. App. 1992) (stating a public entity's property for purposes of sovereign immunity "clearly refers to ownership of a property interest"). This Court agrees.

When the public entity does not own the property at issue, the inquiry must focus on whether the public entity had possession and control over the property equal to the possession and control of a property owner.[13] The plain meaning of the phrase "public

---

[13] In *James v. Farrington*, 844 S.W.2d 517 (Mo. App. 1992), the court of appeals rejected the argument that only legal ownership would satisfy the phrase "public entity's property" in section 537.600.1(2). In *James*, a board of elections occupied a church temporarily to conduct an election. *Id.* at 517-18. Pursuant to statute, board employees "actually occupied the polling premises and were provided the authority to make this possession exclusive to the voting public and authorized personnel" and had "exclusive control over the part or the area of the church contracted for during the election process" including the right to inspect and make non-invasive alterations to better suit the premises to its purposes. *Id.* at 519 ("Section 115.409, RSMo states that only election authority personnel, election judges, watchers and challengers or law enforcement officials at the request of election officials who were in the line of duty, and registered voters 'shall be admitted to the polling

16

entity's property" in section 537.600.1(2) encompasses both actual legal ownership and a functionally equivalent degree of possession and control. *See Moore v. Bi-State Dev. Agency*, 609 S.W.3d 693, 696 (Mo. banc 2020) ("When the words are clear, there is nothing to construe beyond applying the plain meaning of the law.").

In the present case, the jury instruction failed to state this law accurately. Instruction No. 8 directed the jury to determine if the State "owned or controlled the … Courthouse basement stairway[.]" This Court is unpersuaded the use of the word "control" alone and unmodified in the instruction was sufficient to meet the requirement of "possession and control rising to an ownership interest[.]" *Thomas*, 261 S.W.3d at 580.

Of course, not every level of control over the property renders it the "public entity's property" for purposes of sovereign immunity waiver under section 537.600.1(2). In *Russell*, for example, this Court found the defendant public entity tasked with regulating a railroad crossing did not exercise the requisite level of control over the property to qualify for the waiver of immunity under section 537.600.1(2). 91 S.W.3d at 616. Specifically, this Court held property "merely regulated by a government agency or entity is not 'public

---

place.'"). Observing that the definition of the word "property" includes both ownership and possession, the court of appeals interpreted the phrase "public entity's property" as used in section 537.600 to include both legal ownership and, if the public entity is not the legal owner, then exclusive possession and control. *Id.* at 519-20. The court of appeals found the board of elections "had full and total control of the church used for the election while the election was being conducted." *Id.* at 518. "Under the facts of the present case, a definition of the term 'public entity's property' includes the exclusive control and possession of a polling place." *Id*. at 520. As the court of appeals found in *James*, even a temporary possessor holding both exclusive possession and control over the property it occupies can satisfy the phrase "public entity's property" as used in section 537.600.1(2). *Id.*

17

property' and, accordingly, is not within the statutory exception to sovereign immunity." *Id*.

Instead, when the public entity does not own the property, it must have "exclusive possession and control" over it for section 537.600.1(2) to apply. *Summitt by Boyd v. Roberts*, 903 S.W.2d 631, 635 (Mo. App. 1995) (property containing an allegedly dangerous condition was not owned or under exclusive control or possession of any public entity; therefore, the dangerous condition waiver of sovereign immunity was not applicable); *Tillison v. Boyer*, 939 S.W.2d 471, 473 (Mo. App. 1996) ("'[T]he term of the property' includes having exclusive control and possession of the property."); *Sisk v. Union Pac. R.R. Co.*, 138 S.W.3d 799, 807 (Mo. App. 2004) ("Jackson County … is not liable for allegedly dangerous conditions on adjacent property that it does not own or exclusively possess or control."); *Thomas*, 261 S.W.3d at 576 ("In the context of a waiver of sovereign immunity [under section 537.600], an Election Board's 'property' includes the exclusive control and possession of a polling place."); *Randel v. City of Kan. City*, 467 S.W.3d 383, 388 (Mo. App. 2015) ("Missouri cases do indeed hold that where a public entity exercises 'exclusive control and possession' over property, the property will be viewed as 'a public entity's property' for purposes of section 537.600.1(2)."). This Court too adopted "exclusive possession and control" in interpreting the phrase "public entity's property" under section 537.600. *See Russell*, 91 S.W.3d at 616. In *Russell*, in which the public entity did not own the subject property, this Court held, "for property to be considered that of the sovereign for the purpose of waiver immunity under section 537.[6]00[ ], the sovereign must have the exclusive control and possession of that property." *Id.*

18

Accordingly, it was erroneous for Instruction No. 8 to refer to "ownership and control" rather than "ownership or exclusive possession and control."

Generally, an applicable MAI instruction must be given to the exclusion of other instructions. Rule 70.02(b). But an MAI instruction containing an inaccurate statement of the substantive law should not be given. *Templemire*, 433 S.W.3d at 376. Here, the language in MAI 31.16—which Instruction No. 8 uses—fails to require "exclusive possession and control" as set out in *Russell*; therefore, it did not comport with the plain and ordinary meaning of "public entity's property" as that phrase is used in section 537.600.1(2). Rather, the instruction should have directed the jury to hold the State liable only if it owned or had "exclusive possession and control" over the Courthouse stairs at the time of Allen's accident. As given, Instruction No. 8 "misled, misdirected, or confused the jury," entitling the State to a reconsideration of the issues in the circuit court if "prejudice resulted from the instruction." *Fleshner*, 304 S.W.3d at 90-91.

Without a doubt, the State was prejudiced by Instruction No. 8. Because the evidence clearly established the State did not legally own the Courthouse, Instruction No. 8 permitted the jury to find the State liable if the State had mere "control—but not "exclusive possession and control"—over the Courthouse stairs.

This prejudice was compounded by other instructions given to the jury. In addition to Instruction No. 8, Instruction No. 7 likewise misdirected the jury to assign the County fault if the jury found it "owned or controlled" the staircase. The jury was also orally

19

instructed it could find one defendant at fault, the State or the County, but not both.[14]  These

instructions required the jury to weigh liability between the State and the County using an

incorrect standard.  While this Court takes no position as to whether sufficient evidence

was presented to establish the State possessed exclusive possession and control of the

stairway, it is likely a properly instructed jury would come to different conclusions

regarding the liability and/or comparative fault of the State and the other defendants.  The

State is entitled to further proceedings in which liability is fairly considered among all the

remaining parties utilizing a proper construction of the phrase "public entity's property" as

used in section 537.600.1(2).  This Court, therefore, vacates the judgment to the extent it

was entered against the State and in favor of the County and remands the case for further

proceedings consistent with this opinion.

    II.    The Allens' Appeal

The Allens raise three points on cross-appeal.  The Allens argue the circuit court

erred in: (1) sustaining the City's motion for directed verdict because the City was a

co-owner of the Courthouse; (2) overruling their motion for a new trial as the verdict for

the County was against the weight of the evidence; and (3) overruling their motion for a

---

[14] After the jury began its deliberations, it presented the circuit court with the following question: "If we find all three at fault, the Defendants and Plaintiff, may we assign percentage to each?"  After conferring with attorneys for the County and the State, the circuit court gave the following instruction to the jury:

        THE COURT: All right. The record will show that the question is answered:
        "Percentages of fault may be assigned to Plaintiff and either Defendant, but
        not both Defendants."

This Court takes no position whether the Court's oral instruction requiring exclusive liability was properly given.

new trial because the verdict rejecting the husband's loss of consortium claim was against the weight of the evidence. The Allens' three claims are all conditioned on this Court's finding for the State on either of the claims the State raised on appeal. Because this opinion grants the State relief on its claim of instructional error, discussed *supra*, this Court reviews the Allens' first and third claims. The validity of the jury's verdict in favor of the County, however, need not be examined. As discussed *supra*, the judgment is vacated to the extent it was entered in favor of the County; therefore, the Allens' second claim is moot.

      a.      *The City's Motion for Directed Verdict*

The Allens' first point on cross-appeal asserts the circuit court erred in sustaining the City's motion for directed verdict because the City was a co-owner of the Courthouse. "A case may not be submitted unless legal and substantial evidence supports each fact essential to liability." *Tharp*, 587 S.W.3d at 652. The Allens contend the circuit court's ruling was erroneous because the Courthouse was the City's property under the meaning of "public entity's property" as used in section 537.600. The City counters it lacked "exclusive possession and control" over the basement stairway; thus, sovereign immunity was not waived under section 537.600.1(2) despite the City's undivided one-half ownership interest in the Courthouse. This Court agrees with the Allens. The phrase "public entity's property" as used in section 537.600.1(2) applies to public entities that legally own the property where the accident occurred **or** that lack legal ownership but have exclusive possession and control over the property.

The circuit court's stated reason for sustaining the City's motion for directed verdict was that the City lacked "exclusive control and possession" over the basement stairway.

21

This finding is clearly erroneous. The Allens introduced evidence of an agreement between the City and the County showing each held an undivided one-half interest in ownership of the Courthouse. For purposes of establishing that a building is a "public entity's property," the analysis stops upon a showing of actual or legal ownership by a public entity. A plaintiff seeking to establish injury on a "public entity's property" under section 537.600 need only introduce evidence the public entity had "exclusive possession and control" of the property when the public entity does not have actual or legal ownership of the property. Because the Allens produced evidence showing the City was a legal owner of the Courthouse, the circuit court erroneously entered directed verdict as to the City. To the extent the judgment was entered in the City's favor, it is vacated.[15]

b.      *The Husband's Loss of Consortium Claim*

The Allens last argue the circuit court erred in overruling its motion for new trial because the jury's adverse determination that Allen's husband sustained no damages

---

[15] In its appellate brief, the City cites extensively to *Ford v. Cedar County*, 216 S.W.3d 167, 168 (Mo. App. 2006), to support its position that the legal owner of a property still must possess exclusive possession and control over the property to trigger the waiver of sovereign immunity under section 537.600. In *Ford*, the plaintiff sued Cedar County following an accident on County Road 1415 in Cedar County. *Id.* at 168-69. It is unclear from the court of appeals opinion whether the County actually owned the road in question. *Id.* The court of appeals affirmed a circuit court's grant of summary judgment for Cedar County, finding it lacked "exclusive possession and control" over the road. *Id.* at 171-72. To the extent the court of appeals decision held a public entity legally owning property containing a dangerous condition would be entitled to summary judgment on the basis of sovereign immunity because the property was not a "public entity's property" as contemplated under section 537.600, that case and reasoning should no longer be followed. A plaintiff need not demonstrate the public entity possesses "exclusive possession and control" of the property to satisfy the "public entity's property" element of section 537.600 if the public entity is the legal owner of the property. *See supra* Part I.b."

pursuant to his loss of consortium claim was erroneous. This opinion declines to reach the merits of this claim, as the Allens failed to include it in their motion for new trial and, as such, it was not preserved. *See* Rule 78.07(a); *see also State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016) ("Including a claim of error in a motion for new trial is a requirement of preserving an issue for review[.]"). This final point is denied.

## Conclusion

The circuit court's judgment is affirmed as to the husband's loss of consortium claim. In all other respects, however, the judgment is vacated because the circuit court erred in its interpretation of the phrase "public entity's property" in section 537.600.1(2). The case is remanded for further proceedings so the circuit court may consider the liability of all three defendants consistent with this opinion.

_____
W. Brent Powell, Judge

All concur.

23